THE SAALFIELD PUBLISHING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15535. Promulgated November 1, 1948.

*Robert Guinther, Esq.*, for the petitioner.
*Howard M. Kohn, Esq.*, for the respondent.

### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax, declared value excess profits tax, and excess profits tax for 1943 in the total amount of $5,805.04. The separate deficiencies have not been proved. The petitioner on its returns claimed a deduction of $37,471.41 representing its contribution to a pension trust. The Commissioner allowed $30,938.17. The only issue for decision is whether he erred in disallowing the difference of $6,533.24. The facts have been stipulated.

The petitioner, a corporation, filed its returns for 1943 with the collector of internal revenue at Cleveland, Ohio.

The petitioner, which had been in existence for a number of years, established a pension trust as a part of an employees' pension plan in 1942. The Commissioner recognizes that the trust is exempt under and the plan meets the requirements of section 165 (a) of the Internal Revenue Code. The entire cost of the plan was paid by the petitioner. An individual insurance contract providing for the payment of annuity benefits commencing at retirement was purchased from an insurance company for each participant. Those contracts were of the level premium type, the entire cost of each being payable in equal annual premiums over the period from the date of purchase of the contract to the normal retirement date of the participant. The premiums were determined by reasonable and generally accepted actuarial methods.

The petitioner contributed $37,471.41 in 1943 for use by the trustee to pay the premiums for that year on the annuity contracts. It was the exact amount needed and used for that purpose. The petitioner claimed the entire amount as a deduction under section 23 (p) (1) (A) (i) and (ii). The Commissioner, in determining the deficiency, allowed $30,938.17 of the amount claimed and disallowed the difference of $6,533.24 as a deduction for 1943.

The entire amount which the petitioner paid over to the trust was the exact amount "necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount" and was "not in excess of 5 per centum of the compensation otherwise paid or accrued during the year to all the employees coming under the trust" plus the excess over that amount necessary to provide the remaining unfunded cost of their past and current service credits distributed as a level amount. The cost with respect to no three individuals was more than 50 per centum of the remaining unfunded cost. The Commissioner makes no argument to the contrary. The petitioner points out that these circumstances bring the entire amount precisely within the deduction allowed by section 23 (p) (1) (A) (i) and (ii). The Commissioner says in effect that the entire level premiums actuarially necessary to fund the credits under the plan used by this petitioner are not deductible under clauses (i) and (ii), since the allowable deduction computed under the method described in subpart B of Part II of a "Bulletin on Section 23 (p) (1) (A) and (B)" promulgated by him on June 1, 1945, is a lesser amount. The problem here is to determine whether there is in the statute or in any proper interpretation thereof contained in the regulations any justification for the limitation which the Commissioner has placed upon the deduc-

tion claimed by this petitioner under section 23 (p) (1) (A) (i) and (ii).

The first provisions allowing deductions for employer contributions to pension trusts were in section 23 (q) of the Revenue Act of 1928. Many employers then had employee pension plans, but were not getting deductions for their contributions thereto. Section 23 (q) was enacted at that time so that employers who chose to conform their plans to the statute could get the full benefit of deduction for their contributions. See also section 165. The intention was also to encourage additional employers to inaugurate similar plans. Congress, believing that the contributions to all such plans would be abnormally large in the early years of the legislation, as well as in the early years of any newly inaugurated plan which gave credit for past services, provided that the deductions for contributions to such a fund for past service credits should be "apportioned in equal parts over a period of 10 consecutive years beginning with the year in which the transfer or payment is made." It later provided that the remaining nine-tenths could be deducted in subsequent years. Contributions to the trusts during the taxable year to cover the pension liability accruing during the year were allowed as a deduction under section 23 (a). These or similar provisions were retained in several subsequent revenue acts and became section 23 (p) of the Internal Revenue Code.

Section 162 (b) of the Revenue Act of 1942 amended section 23 (p) of the code to give it substantially its present form.[1] Congress decided at that time that no deduction should be allowable under section 23 (a) for amounts paid into a pension trust, but all such deductions should be allowable only under section 23 (p). The following from House Report No. 2333, 77th Cong., 2d sess., p. 105, describes the House bill:

\* \* \* The amendments to section 23 (p) provide that the amounts paid into a trust that is exempt under section 165 (a) shall be deductible only in the

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(p) CONTRIBUTION OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows:

(i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Commissioner upon periodical examinations at not less than five-year intervals to be more than the amount reasonably necessary to provide

year when paid into the trust in an amount not in excess of 5 percent of the compensation otherwise paid or accrued during the taxable year to the beneficiaries of the trust. The excess over 5 percent of the amount so paid is deductible in equal parts over a period of 60 consecutive months beginning with the first month of the year in which such payment is made.

It is stated on page 44 of Senate Report No. 1631, 77th Cong., 2d sess., that a number of changes had been made "which liberalize the treatment accorded in the House bill but which, at the same time, in the opinion of your committee, make the provision adequate to prevent abuse and tax avoidance in this field." The report also contains the following comments, at page 45:

In addition to the 5 percent of total compensation allowed as a deduction under the House bill, additional amounts may be deducted if it is demonstrated that they are actuarially necessary to discharge the liabilities under the plan. In determining such amounts, both past and current service credits allocated as a level amount over the remaining future service of each employee may be considered. If it is desired to take care of past service credits more rapidly, the employer is allowed deduction for amounts paid for pensions with respect to such past services to the extent of 10 percent of the total cost thereof. Moreover, if an employer in a prosperous year pays in more than such maximum amounts, he is allowed to take a deduction for the amount in excess of such 10 percent, prorated over the 5 succeeding taxable years to the extent that payments for pensions in those years do not exceed the maximum amount otherwise allowable.

The following is from page 139 of the Senate report:

Further provision is, however, necessary for those plans under which the employer's contributions in any given year may properly exceed 5 percent of compensation. Those plans fall into several general classes. Under one class, the employer's contributions for both past and current service credits are determined actuarially in terms of a level amount, or a level percentage of compensation, over the remaining future service of each employee. * * * The committee feels that for such cases the employer's contributions are a proper deduction, even if in excess of 5 percent. Appropriate revision to that effect has been made, subject to the requirement (in order to avoid possible abuses) that the actuarial computations be on a basis permitted under regulations

---

the remaining unfunded cost of past and current service credits of all employees under the plan, plus

(ii) any excess over the amount allowable under clause (i) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, but if such remaining unfunded cost with respect to any three individuals is more than 50 per centum of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(iii) in lieu of the amounts allowable under (i) and (ii) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 per centum of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

prescribed by the Commissioner with the approval of the Secretary, and, if three or less employees account for more than 50 percent of the unfunded cost, to require distribution of the unfunded cost for such employers over a period of at least 5 taxable years.

The report continues with a discussion of another class, under which the cost is not distributed as a level amount over the remaining future service, and with a discussion of methods for determining "normal cost under acceptable plans." Then the following appears:

* * * the House bill has been revised to permit an employer to use as an alternative to the 5-percent test with the distribution of any remaining unfunded cost as a level amount or level percentage, any of the other recognized bases of determining normal cost provided it is done in accord with regulations prescribed by the Commissioner with the approval of the Secretary. The provision for this alternative also includes a reasonable procedure for the deductibility of the cost of past service credits (not included in the normal cost). The procedure will allow deductions for amounts contributed for past service credits in the year when made, up to an amount not in excess of one-tenth of the cost required to completely fund or purchase the past service credits as of the date they are included in the plan. This deduction is in addition to the normal cost deduction and is also subject to its determination being in accord with the regulations. [See pages 139 and 140.]

The following is from the Conference Report, House Report No. 2586, 77th Cong., 2d sess., at page 52:

The House bill limited the employer's deduction in the year of payment of contributions to a plan to 5 percent of the compensation otherwise paid to the employees with permission to spread any excess over a 5 year period. * * * Further provision has been made for plans where it is actuarially necessary for the employer's contributions in any given year to exceed 5 percent of the compensation otherwise paid employees. Under the Senate changes, where the employer's contributions for both past and current service credits are determined in terms of a level amount, or a level percentage of compensation, over the remaining future service of each employee, the employer's contributions are permitted, with a minor qualification, as a deduction in excess of the 5 percent limit where actuarially necessary. Where the employer may be said to pay a level percentage of compensation for present services but pays in irregular amounts for past services a deductible amount is allowed in addition to normal cost of not in excess of 10 percent of the cost which would be required to completely fund or purchase the pension or annuity credits as of the date when they are included in the plan. Any excess may be carried over to a subsequent year in which contributions fail to reach the prescribed limits.

The House receded.

It is apparent from the words of the act, and also from its legislative history quoted above, that Congress intended to allow as an annual deduction under section 23 (p) (1) (A) (i) and (ii) the entire amount actuarially "necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount * * * over the remaining future service of each such employee," provided that the remaining unfunded cost with respect to no three

individuals was more than 50 per centum of the remaining unfunded cost. Congress contemplated that regulations would be promulgated describing the kind of actuarial computations which would be permitted so as to avoid possible abuses. Such a regulation was duly promulgated on this subject, providing that:

The level amount or level percentage of compensation under clause (ii) of section 23 (p) (1) (A) may be determined by any reasonable and generally accepted actuarial method selected by the employer. While the need for actuarial calculations is implicit in clause (ii), the statute leaves the determination of specific methods to regulations to be prescribed by the Commissioner with the approval of the Secretary. [Sec. 29.23 (p)–6 of Regulations 111.]

The Commissioner does not argue that the petitioner has failed to comply with that part of the regulation, that the actuarial method selected by it was not reasonable or generally accepted, that there is any fault with it as an actuarial method, or that the amount paid and claimed as a deduction by the petitioner for 1943 is more than is actuarially necessary under the level method. The conclusion that the amount deducted by the petitioner was allowed by section 23 (p) (1) (A) (i) and (ii) would, therefore, seem irresistible and is nowhere resisted in the respondent's brief.

The Commissioner says that the petitioner can not have the deduction allowed under clauses (i) and (ii) because it funds the cost too rapidly to suit him.[2] He argues that the words of the amendment and the committee reports discussing them show clearly, through the obvious relationship of clause (ii) to clause (iii), a congressional intent that the deduction should never be at a rate greater than that permitted in clause (iii), "which imposes a '10 per cent' or ten year rate, limitation" and that Congress "intended to retain the general over-all limitation of a ten year funding rate." The words of the act and the legislative history do not support that argument. The excess of any contribution over 5 per cent of the beneficiaries' pay roll could have been deducted over a period of 60 consecutive months under the House bill. Sixty months is, of course, just one-half of 10 years. The changes made by the Senate were to liberalize the treatment accorded in the House bill. The treatment accorded the present petitioner by the Commissioner is obviously less liberal than what would have been accorded it under the House bill. The Senate report and the conference report, quoted above, show an intention to allow the entire contribution if actuarially necessary to discharge the liabilities for past and current service credits allocated as a level amount over the remaining future service of each employee, with one

---

[2] Twenty-nine employees became participants in the plan at its inception. Four of the participants were less than ten years from normal retirement age, so that the entire costs of the contracts purchased for them were payable in less than ten years. The retirement ages of the other 25 participants were more remote and the costs of the contracts purchased for them were payable over longer periods and were smaller in amount.

exception. That exception, which Congress expressly provided in clause (ii), is:

* * * but if such remaining unfunded cost with respect to any three individuals is more than 50 per centum of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least five taxable years.

It seems wholly inconsistent for the Commissioner to place a further and more severe limitation upon clause (ii) than the one which Congress expressly provided therein. There is nothing in the congressional reports indicating any intention on the part of Congress that the deduction allowed under clauses (i) and (ii) should be thus further limited if, perchance, the level amount actuarially necessary happened to exceed the normal cost and 10 per cent limitation contained in clause (iii).

It is stipulated that the Commissioner made his determination under his regulation and subpart B of Part II of a "Bulletin on Section 23 (p) (1) (A) and (B)," promulgated by him on June 1, 1945. It is not at all clear from this statement or from an examination of the bulletin just how the Commissioner arrived at the amount which he allowed as a deduction, but it is, of course, clear that he did not allow as a deduction the entire amount actuarially necessary to provide the remaining unfunded cost of the employees' past and current service credits distributed as a level amount. The bulletin to which reference has been made contains the following foreword:

This Bulletin contains information from which taxpayers and their counsel may obtain the best available indication of the trend of official opinion in the administration of the provisions of sections 23 (p) (1) (A) and (B) of the Internal Revenue Code, as amended by the Revenue Act of 1942, relating to deductions for contributions of an employer under pension and annuity plans in taxable years beginning after December 31, 1941. It does not have the force and effect of a Treasury Decision and does not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury.

[Signed] JOSEPH D. NUNAN, Jr.

June 1, 1945.                    *Commissioner of Internal Revenue.*

This bulletin does not purport to be a regulation or even a binding rule of the Bureau. Apparently it has never been printed by the Government Printer, included in the Federal Register, or approved by the Secretary of the Treasury. The only copy of the bulletin which this Court has been able to obtain was one printed by one of the tax services. It is 21 pages long, not counting advertising matter, and contains many complicated statements, tables, tests, and computations. The tax year involved herein is 1943, while the bulletin is dated June 1, 1945. No good purpose would be served by discussing this bulletin further. Suffice to say that no such document could have any binding effect upon the Court in deciding this case.

Section 29.23 (p)–6 of Regulations 111 contains the following:

* * * Clause (ii) must be construed in the light of its obvious relationship to clauses (i) and (iii) and the interplay of clauses (i), (ii), and (iii). Each employer desiring to fund under clause (ii) shall submit the proposed method to the Commissioner and receive approval of such method before the results will be acceptable. Any method which does not fund cost of past service credits more rapidly than that permitted under clause (iii) will be acceptable, and the approval of the Commissioner will not be necessary in such a case.

The respondent does not argue that the petitioner failed to submit its proposed method to him for approval or that acceptance of that method should be denied except for the reason that in this case it happened to produce a deduction under clause (ii) which is larger than that which could be obtained under clause (iii).

The regulation quoted above does not definitely provide that any method which funds the cost of past service credits more rapidly than that permitted under clause (iii) will not be acceptable for the purpose of a deduction claimed under clause (ii), but merely provides that the approval of the Commissioner will not be necessary if the method used does not fund cost of past service credits more rapidly than that permitted under clause (iii), that is, not in excess of 10 per cent of the cost annually. It also refers to a relationship and an interplay of clauses (i), (ii), and (iii). Despite the indefiniteness of these statements, it is nevertheless apparent that their application, along with some method set forth in the bulletin mentioned above, has produced a result in this case which finds no support in the statute. They do not provide a reasonable and proper interpretation of the law enacted by Congress, but attempt to write into the law something which Congress did not place there or intend to place there. It is therefore held that, as so applied, they are unreasonable and null and void.

There are several sentences in the congressional reports, quoted above, to the effect that, if it is desired to take care of past service credits "more rapidly," the employer is allowed a deduction for amounts paid for pensions with respect to past service to the extent of 10 per cent of the total cost thereof. The respondent mistakenly argues that support and authority for his view that clause (iii) is a maximum and a limitation upon clauses (i) and (ii) is to be found in those statements. The references to 10 per cent are made at the conclusion of the discussion of the level plan described in clause (ii) and refer, not to the deductions allowed under clauses (i) and (ii), but to the deduction under discussion, to wit, that allowed under clause (iii). The statements refer to an employer who may desire to fund past service credits more rapidly than is actuarially necessary under the method of spreading the cost in a level amount over the remaining future service of each employee, that is, more rapidly than under the method described in clause (ii). "More rapidly" refers to the rate at which past credits

are funded, not to the rate at which the cost thereof is to be deducted. Examples given are where the employer might completely fund past credits as of the date they were included in the plan or where it adopted some plan under which the payments would be made in irregular, as opposed to level, amounts. The reports explain that such an employer may, if it chooses, use the alternative method of computing its deduction provided in clause (iii), but it may not under any such more rapid payment method deduct more than the normal cost of the plan, plus 10 per cent of the total cost of immediate funding of the past service credits. Those references do not justify any regulation, rule, or determination of the Commissioner limiting the deduction under clause (ii) to that allowable under clause (iii). They are no more significant in the interpretation of clause (ii) than is the use by Congress in this same section of percentages larger than 10 per cent in describing deductions allowed under the profit-sharing and other types of plans. Congress was aware of the fact that the early annual deductions under the level plan might be greater than one-tenth of the cost of the funding if a substantial number of the employees were within 10 years of retirement. Nevertheless, the only concern indicated by it is as to the rate at which level cost could be deducted is the limitation provided in clause (ii) and discussed above. Otherwise, it was content to allow the deductions actuarially necessary under the level plan. The petitioner's method is sound and results in no abuse contemplated by Congress. Furthermore, the fact that Congress, in the reports, described the deduction under (iii) as "an alternative" to the deductions allowed under (i) and (ii), and in the statute described the deduction under (iii) as "in lieu of the amounts allowable under (i) and (ii)," is of significance. It seems logically impossible to find, in a method described as an alternative to or in lieu of another, a limitation upon that other.

The petitioner is entitled to the entire deduction which it claimed and the Commissioner erred in limiting the deduction to an amount less than the level amounts actuarially necessary and actually paid in the taxable year to fund past service credits of the participating employees over the period of the remaining future service of each.

Reviewed by the Court.

*Decision will be entered under Rule 50.*