VOLCKENING INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17859.   Promulgated November 10, 1949.

*Joseph Berger*, *C. P. A.*, for the petitioner.
*Rigmor O. Carlsen*, *Esq.*, for the respondent.

726

OPINION.

Leech, *Judge*: The question presented is whether petitioner is entitled to deduct the amounts of $8,649.73 and $9,417.72 in the re-

spective taxable years 1943 and 1944 as contributions to an employees' pension trust.

By the Revenue Act of 1942, Congress forbade any such deductions except as provided in section 23 (p) of the Internal Revenue Code, as amended by that act.  With respect to taxable years beginning after December 31, 1941, contributions by an employer to a pension trust for the benefit of his employees are deductible to the extent prescribed in section 23 (p), if the pension trust meets the conditions set forth in section 165 (a), as amended by the Revenue Act of 1942.[1] *Tavannes Watch Co.* v. *Commissioner*, 176 Fed. (2d) 211, reversing 10 T. C. 544 on another point; *Saalfield Publishing Co.*, 11 T. C. 756 (petition for review dismissed on stipulation of parties).

[1] SEC. 165.  EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employee or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

(2) if under the trust instrument it is impossible at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

(5) A classification shall not be considered discriminatory within the meaning of paragraphs (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 1426 (a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees.  Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from "wages" by section 1426 (a) (1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law.

(6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.

The respondent contends that the petitioner's pension plan does not meet the requirements of section 165 (a) because it is not a plan for the exclusive benefit of employees, and it discriminates in favor of petitioner's two stockholder-employees.

The respondent argues that the plan is not for the *exclusive* benefit of petitioner's employees because additional benefits inure to the stockholder-employees. He points out that when the plan was adopted in 1941 petitioner was aware that its gross sales had nearly doubled; that, owing to the war, tin would become more scarce for private use, thereby increasing the demand for petitioner's product; and that, with the large increase in income taxes and excess profits taxes, the type of plan adopted offered the owners the greatest opportunity to retain the benefits resulting from such circumstances.

The respondent argues that the plan is discriminatory in the manner prohibited by subdivision (4) of said section 165 (a), in that the contributions made to cover the benefits to petitioner's president and vice president, who owned all its stock, violate the 30 per cent rule contained in I. T. 3674.[2]

Petitioner contends that its plan meets all the requirements of section 165 (a) as amended. Subsections (1) and (2) do not differentiate between employees who are stockholders and those who are not. Protection for the latter is provided for in subsection (4). The plan is for the purpose of distributing corpus to petitioner's employees or their beneficiaries, and it is impossible to use or divert such corpus to purposes other than for the exclusive benefits of employees. We think, therefore, it complies with subsections (1) and (2) of section 165 (a) as a plan for the exclusive benefit of petitioner's employees.

Is the plan discriminatory in violation of subdivision (4)?[3] It is stipulated that the contributions for the benefit of the two stockholder-employees, who own all of petitioner's capital stock, were greater than the total contributions for the rest of the employees in the taxable years involved. Petitioner concedes its plan violates the 30 per cent rule contained in respondent's I. T. 3674, but contends the rule as applied to its plan is arbitrary and not in accord with the statute. The respondent admits that the 30 per cent rule does not furnish an exclusive test of qualification or disqualification, but is a mere rule of thumb. Section 165 (a) contains no prohibition against stockholder-

---

[2] I. T. 3674, 1944 C. B. 315, reads as follows:

"A pension or profit-sharing plan shall not generally be considered to be for the benefit of shareholders if contributions which are required to provide benefits for employees, each of whom owns, directly or indirectly, more than 10 per cent of the voting stock of the corporation, do not exceed, in the aggregate, 30 per cent of the contributions for all participants under the plan. For the purpose of determining stock ownership, an individual shall be considered as owning the stock owned by the spouse and minor lineal descendants of such individual."

[3] H. R. 2333, 77th Cong., 1st sess., 1942–2 C. B. 372, 413.

employees' participating in a pension plan adopted by an employer. In fact, it directly implies the opposite by providing that the plan shall not discriminate in favor of stockholders. Subdivision (5) of the section provides, *inter alia*, that a pension plan need not be considered discriminatory under subdivision (4) "merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation of such employees."

Petitioner's pension plan, as amended on December 20, 1943, provides for the purchase of life insurance policies with retirement benefits in the amount of 30 per cent of each employee's basic compensation upon each employee reaching the age of 55 years. The maximum benefit permitted, regardless of the amount of basic salary, is $200 per month. The plan, therefore, tends to discriminate against the persons specified in subsection (4) rather than in their favor. That the contributions to cover the cost of the benefits to be paid petitioner's stockholder-employees are greater than the total contributions to cover the cost of benefits to nonstockholder-employees, results, in the instant case, from the greater age of the stockholder-employees and the small number of nonstockholder-employee beneficiaries. Since, however, the contributions bear a uniform relation to the basic or regular rate of compensation, the reasonableness of which the respondent does not question, and the record otherwise convinces us that no prohibited discrimination occurred, the plan is not discriminatory. The respondent's I. T. 3674 is a general rule only and is to be considered with all the facts. We have so considered it and believe it has no application here.

Under the plan as amended, all present regular full time employees and all future employees, upon completion of two years of service, are included as beneficiaries. The plan, therefore, meets the requirements contained in subdivision 3 (A) of section 165 (a).

Therefore, the plan meets all the requirements of section 165 (a) of the code as amended. We accordingly hold that the contributions made to the plan constitute allowable deductions to the extent provided in section 23 (p) of the Internal Revenue Code, as amended by the Revenue Act of 1942. Cf. *Saalfield Publishing Co., supra.*

The amounts of $8,649.73 and $9,417.72 paid by petitioner as contributions to its pension trust represent the actual cost in the respective taxable years determined by the insurer as actuarially necessary under the plan, and constitute proper deductions from its gross income. Petitioner's contention is sustained. Petitioner, on its 1944 return, claimed only the amount of $9,047.05. It is stipulated the correct amount is $9,417.72; therefore,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

HARLAN, J., dissenting: I disagree with the majority opinion because it seems to me apparent that, when the taxpayer corporation paid 58.3 per cent of $8,649.73, or $5,040.79 in 1943, and 53.2 per cent of $9,417.72, or $5,010.63, in 1944 to buy an annuity for two corporate officers who owned all the corporate stock, while the remainder of the pension fund was divided among annuities for six nonstockholding employees, the benefit of the insurance plan did "discriminate in favor of employees who were officers, shareholders, persons whose principal duties consisted of supervising the work of other employees, or highly compensated employees," contrary to the interdiction of section 165 (a) (4) of the Internal Revenue Code.

To arrive at such a conclusion, it is not necessary to rely upon or apply I. T. 3674, 1944 C. B. 315. An examination of the statute itself is sufficient. In each of the taxable years Volckening, Inc., paid out over $5,000 of its income free of taxation, to give substantial annuities to its president and its president's wife, the corporate secretary, who together owned all the corporate stock. These annuities were received by the beneficiaries also without having to pay any individual income tax on the money used in their procurement. The opinion states in effect that this was not discrimination in favor of the president because he earned $20,000 a year and could not get an annuity of 30 per cent of that salary, whereas all employees getting under $8,000 a year would receive an annuity equal to 30 per cent of their salary.

We are persuaded that the value of the annuity depends upon the amount of money paid by the insurance company to the beneficiary and not upon the ratio of that amount to the beneficiary's prior salary. When the president got an annuity of $2,400, he got just what the corporation paid for, just as the other employees received annuities in amounts covered by the premiums paid by the corporation.

Section 165 (a) (4) of the code, in discussing discriminations, was certainly not interested in the ratio between the amount of the annuity to the salary of the annuitant. That section of the code was vitally interested in corporate discriminations whereby an undue proportion of the pension fund was expended for annuities of corporate stockholders, officers, and high salaried employees as against the amount of annuities paid out for ordinary employees who were not stockholders.

In the case at bar, where only two high salaried office-holding stockholders procured the benefit of more than one-half of the money paid for insurance to all of the corporate employees, it seems to me that discrimination is evident.