Marjorie F. Birnie v. Commissioner. John Urquhart Birnie v. Commissioner.
Birnie v. Commissioner
Docket Nos. 23674, 23675.
United States Tax Court
1953 Tax Ct. Memo LEXIS 160; 12 T.C.M. (CCH) 867; T.C.M. (RIA) 53264; July 31, 1953
Carl A. Stutsman, Jr., Esq., for the petitioners. Charles H. Chase, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income tax for 1945 as follows: Docket No. 23674 Marjorie F. Birnie $706.61 Docket No. 23675 John U. Birnie 661.77 The petitioners, residents of California, reported their income for the taxable year on a community property basis. The issue presented relates to deductions taken by the petitioner, John U. Birnie. The respondent disallowed deductions claimed under section 23 (p) of the Code for contributions to an employees' pension trust and to an employees' profit-sharing trust in the amounts of $2,141.90, and $1,933, respectively. The question *161 to be decided is whether the trusts, which were established by the petitioner for the benefit of his employees, are discriminatory in their operations, inclusive of termination. Other adjustments made by the respondent are not contested. The petitioners filed income tax returns for 1945 with the collector for the sixth district of California. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by this reference. The petitioner, Marjorie F. Birnie, was the wife of the petitioner, John U. Birnie, during 1945, and they resided in California. Marjorie F. Birnie's income tax liability for 1945 is involved in these proceedings only because under the community property laws of California she was entitled to report, in 1945, one-half of her husband's community earnings for Federal income tax. She was not an employee of John U. Birnie during 1945, and she is not familiar with the business operations to which the issue in these proceedings relates. For convenience, the term "petitioner", as used herein, refers only to John U. Birnie. The petitioner was engaged in business under the names of Korktone Company and Birnie Electric *162 Company, as a sole proprietor, during 1945 through 1947, and before. During 1940 the petitioner was engaged in the business of developing, patenting, manufacturing, and selling processes and applications in the field of insulation for soundproofing, electrical conduit covering, and temperature control. The use of the processes developed by the petitioner were expanded to the construction field. During the war years, the major part of the work performed by the business enterprises operated by the petitioner was limited to war or public contracts, but the nature of the work performed had equal value under peace time economy. Between 1940 and and 1941, petitioner obtained various jobs at naval yards for the insulation of ships. The Navy used tools developed by petitioner in the performance of its own insulation work. Petitioner experimented in substitutes for cork for insulating material, and developed vermiculite and perlite as substitutes. In about 1944, petitioner employed six or seven skilled electrical installation men who had been working at Las Vegas, Nevada, on electrical installations at the Basic Magnesium plant. Thereafter, petitioner obtained contracts for electrical construction *163 on civilian and military jobs. In May 1944, petitioner was awarded a contract, under competitive bidding, by the Permanente Metals Corporation for installation of degaussing, radar, voice tubing, and mechanical telegraph and wire way equipment on twenty-two A.P.A. type naval vessels being constructed by Permanente under contracts of the U.S. Maritime Commission. In November 1944, petitioner was awarded a second contract relating to 12 more naval vessels. The petitioner was a subcontractor of Permanente and, therefore, profits were subject to renegotiation. After completion of work for Permanente, it was determined, under an audit made by the Maritime Commission, that petitioner's profits under the subcontracts were excessive in the amount of $190,490.96, of which sum, $148,946.57 had been paid to petitioner; and Permanente sued petitioner and a bonding company on July 19, 1946 to recover $148,946.57 of the allegedly excessive profits. On October 23, 1950, the United States District Court for the Northern District of California entered judgment against the petitioner, and in the alternative against the bonding company. The judgment was affirmed by the United States Court of Appeals *164 for the ninth circuit. The litigation, which extended over a period of several years, eventually forced the petitioner out of business, and into insolvency. The filing of the action in 1946 injured the petitioner's credit standing. It thereafter became increasingly more difficult for the petitioner to obtain the necessary bonds from bonding companies to cover bids on construction jobs. Substantial accounting and legal expenses were incurred and paid by the petitioner in defending the action. Before the development of adverse conditions in his business, the petitioner adopted an employees' pension trust and an employees' profit-sharing trust, under separate trusts, which were effective December 31, 1944. The profit-sharing trust was amended on March 7, 1945 and on June 15, 1945. Both amendments were effective December 31, 1944. The pension trust was amended on June 15, 1945. The amendment was effective December 31, 1944. Each of the trusts was approved by the Commissioner of Internal Revenue as exempt from income tax under section 165 (a) of the Code, by letter dated June 19, 1945. [1] The provisions of the pension and profit-sharing trusts, as amended, are incorporated herein by *165 this reference. The two trusts were created for the exclusive benefit of the petitioner's salaried employees, a classification permitted by section 165 (a) (3) of the Internal Revenue Code, and approved by the Commissioner. The trusts were administered by the California Trust Company of Los Angeles. The Pension Board and Benefit Committee provided for in the trusts were comprised of the petitioner *166 and two employees, one of whom was Grace Correo, the petitioner's secretary-bookkeeper. All contributions to the trusts were made by the petitioner. The amount of benefit payable to participating employees was fixed by a pre-determined formula. No property forming a part of either trust could revert to, or inure to the benefit of the petitioner. If the petitioner ceased or discontinued the business carried on by him through the Korktone and Birnie Electric Companies, the Pension Board and Benefit Committee were directed to terminate the trusts. Petitioner retained the right to amend the trusts subject to limitations. The Pension Trust. The pension trust provided for monthly retirement income, and death benefit coverage for participating employees, through the medium of retirement income, insurance, or annuity contracts issued by a legal reserve life insurance company. Provision was also made for severance benefits upon termination of employment prior to normal retirement age. Retirement age under the trust was 65. Severance benefits on termination of employment prior to retirement were payable after three years' participation in the trust, after which period a participating employee *167 acquired a 30 per cent vested interest in the benefits under the insurance contracts on his life. An additional 10 per cent vested interest accrued for each additional year of coverage. After 10 years of participation, an employee acquired a 100 per cent vested interest in benefits. A participant's nonvested interest was forfeitable upon termination of employment. The Profit Sharing Trust. The profitsharing trust provided for retirement, death, and severance of employment benefits. Benefits under this trust were measured by years of employment. For each full year of employment, an employee received a 10 per cent nonforfeitable interest in his pro rata share of the trust assets. Korktone and Birnie Electric Company employed 136 persons on June 6, 1945, of whom six were qualified participants of the trust. Those employees on an hourly wage basis were not eligible for participation. One additional employee became qualified for participation in the trust in 1946. The following schedule shows the seven persons who were employees of both Korktone Company and Birnie Electric Company, who were beneficiaries of the trusts, the compensation received by each employee during 1945, 1946, *168 and 1947, and the dates when employment was terminated: Salary Basis for Contributions
Employment
Name
1945
1946
1947
Terminated
Ann Bering
$1,800
$2,280
$2,280
9- 1-47
Grace Correo
3,300
3,900
1,340
Fred Gelston
4,800
4,800
4,800
7-19-47
Ben Harwood
6,000
6,000
2-28-46
Martha Magee
2,700
11-15-45
Lina Wilson
2,100
2,100
2-28-46
Sidney Bishell
1,540
1,540
3-19-47
Grace Correo was the petitioner's secretary-bookkeeper. She was employed by the petitioner on January 1, 1944. Her principal duties consisted of performing secretarial work for the petitioner, and maintaining the books and records of the petitioner's two firms. She devoted approximately 75 per cent of her time to these duties. In addition she prepared the various reports required in the petitioner's business. In the preparation of reports, she was assisted by, and she supervised the work of one clerical employee. In the application filed by the petitioner with the Commissioner of Internal Revenue, for approval of the pension and profit-sharing plans, Grace Correo was listed as a "supervisory employee." Grace Correo was not an employee whose principal *169 duties consisted of supervising the work of other employees. The petitioner made the following contributions to the two trusts: Pension
Profit-Sharing
Year
Trust
Trust
1944
$2,424.23
$2,778.75
1945
2,141.90
2,260.77
1946
1,787.28
0
1947
0.00
0
Total
$6,353.41
$5,039.52
In 1949 the two trusts were terminated by the petitioner effective as of December 31, 1947. The adverse condition of petitioner's business ventures required the termination of the trusts. As of the termination date, the petitioner had only one employee, Grace Correo, who was a participant of both trusts. The employment of the other six participating employees had been terminated prior to December 31, 1947, because of lack of work which was due to the petitioner's inability to obtain contracts, which resulted from the litigation described above. None of the six participating employees whose employment terminated prior to December 31, 1947, had acquired a vested interest in the benefits provided under the pension trust, according to its terms, because none was a participant in the trust for a period of three years or more. As the employment of each was terminated, the insurance *170 policies for the benefit of each, under the pension trust, were surrendered for the then cash value, and the amounts thus received were added to the corpus of the pension trust. Grace Correo, as the remaining participant of the pension trust, received the corpus of that trust upon its termination. The distribution to her was as follows: Policy No. 2202781, after having been reduced to $2,000, death benefit coverage, and to $20.00, monthly retirement income coverage, was assigned to Grace M. Correo in September 1949. The cash surrender value of this policy on December 31, 1949, was $850. In 1950 the total available cash in the amount of $3,722.08 was distributed by the trustee to Grace Correo. Under the provisions of the profit-sharing trust, five of the participating employees whose employment terminated prior to December 31, 1947, received severance benefits totaling $1,841.08. The balance of the contributions allocated to their accounts was forfeited. The forfeitures were credited to the account of Grace Correo in accordance with the terms of the trust. The amount which was distributed to Grace Correo upon the termination of the profit-sharing trust was $3,356.04. Distribution *171 by the trustee was made on August 11, 1950. All payments of benefits under the two trusts, including those made upon termination, were in accordance with the terms and provisions of the trusts. By letter dated September 23, 1948, the petitioner requested the permission of the Commissioner for termination of the trusts. By letter dated March 11, 1949, the petitioner was advised by the Commissioner, in pertinent part, as follows: "* * * the plans did not meet the requirements of Section 165 (a) for the period December 31, 1944, to December 31, 1947, principally for the reason that the plans in their operation, inclusive of termination, were discriminatory in favor of one supervisory employee who was highly compensated, and because the plans in operation were not for the benefit of employees in general." The petitioner, in 1945, made contributions of $2,141.90 to the pension trust, and $2,260.77 to the profit-sharing trust, or a total sum of $4,402.67. Each of the petitioners in their income tax return for 1945, claimed one-half of the total amount of the contributions as a deduction under section 23 (p) of the Code. The Commissioner disallowed all of the claimed deduction for *172 the contribution to the pension trust, $2,141.90. He disallowed $1,933 of the deduction for the contribution to the profit-sharing trust. He allowed the petitioners a total deduction of $327.77 for the nonforfeitable portion of the contributions to the profit-sharing trust. Grace Correo was not a supervisory employee within the meaning of section 165 (a) (4) of the Code. Opinion HARRON, Judge: The issue in these proceedings is whether the pension and profit-sharing trusts established by the petitioner, for the exclusive benefit of his employees, were discriminatory in their operation, inclusive of termination, within the prohibition contained in section 165 (a) (4) of the Internal Revenue Code. The pertinent provisions of the Code are set forth in the margin. [2] The applicable regulations are Regulations 111, section 29.165-1, 4. The respondent at the trial of these proceedings raised a question, whether the pension and profit-sharing plans had complied with any of the requirements of permanence which are inherent in section 165 (a), but he did not argue such question on brief, and, therefore, it has been abandoned. The only issue for decision relates to *173 the factor of alleged discrimination. See Blume Knitwear, Inc., 9 T.C. 1179, 1186. With respect to taxable years beginning after December 31, 1941, contributions by an employer to a pension or profit-sharing trust, for the benefit of his employees, are deductible to the extent prescribed in section 23 (p) of the Code, if the pension or profit-sharing trust meets the requirements of section 165 (a) of the Code, as amended by the Revenue Act of 1942. Volckening, Inc., 13 T.C. 723, 727. The requirement of section 165 (a) which is involved *174 here is the provision in subsection (4) which prohibits discrimination in "contributions or benefits provided under the plan" in favor of employees "whose principal duties consist in supervising the work of other employees." The respondent contends that a trust forming part of a pension or profit-sharing plan must meet the requirements of section 165 (a) of the Code, at its inception and during the entire period of its operation inclusive of termination, if the contributions made pursuant to the plan are to be allowed as a deduction under section 23 (p) of the Code. He concedes that the trusts in question, at their inception, met all of the requirements of section 165 (a), and that the plans for the trusts were submitted to and were approved by him. He contends, however, that the trusts were discriminatory in their operation inclusive of termination, when, upon termination, all of the benefits of the pension trust, and substantially all of the benefits of the profit-sharing trust went to one employee who, respondent argues, was a "supervisory employee." Furthermore, the respondent concedes that all of the payments of benefits under the trusts, including those made upon termination, *175 were made in accordance with the provisions of the trusts which were originally approved by him; that none of the benefits of either trust in any way inured to the petitioner; and that the termination of the trusts was the result of the petitioner's insolvency, and of his inability to continue in business. The respondent's entire contention is based on the assumption that the employee who received the benefits, Grace Correo, was a "supervisory employee." The narrow question for decision is, therefore, a question of fact, namely, whether the principal duties of the employee who received substantially all of the benefits of the trusts upon their termination consisted of "supervising the work of other employees," within the meaning of section 165 (a) (4) of the Code. Upon all of the evidence, it has been found as a fact that the employee in question, Grace Correo, was not a supervisory employee within the meaning of section 165 (a) (4) of the Code. The entire record clearly establishes that Grace Correo, the employee who received the benefits upon termination of the trusts, was not a supervisory employee. The petitioner's business consisted of developing insulation materials and *176 processes, and of installing insulation and electrical work under contracts. In June 1945, when the plans were approved by the Commissioner, the petitioner had 136 employees of whom 128 were construction workers who were paid on the basis of an hourly rate. The remaining employees were engineering assistants, an office receptionist, an office clerk, and a secretary-bookkeeper. Grace Correo was the secretary-bookkeeper. She was employed by the petitioner on January 1, 1944, and her employment continued beyond 1947. Her principal duties consisted of performing secretarial work and maintaining the books and records of the petitioner's two enterprises. These duties consumed approximately 75 per cent of her time. She also prepared various reports which were required in the petitioner's business. In the preparation of reports, she was assisted by, and she supervised the work of one clerical employee. Grace Correo's salary was $3,300 in 1945. Grace Correo and the petitioner comprised the "Pension Board and Benefit Committee" when the trusts were terminated. The respondent, in his argument, emphasizes this fact, and the further fact that in the application submitted by the petitioner to *177 the Commissioner for approval of the trusts, Grace Correo was listed as a "supervisory employee." In view of the entire record, neither of these facts is determinative of the question, and we conclude that the respondent's view is unrealistic in the light of all of the evidence, and is wrong. The evidence establishes that Grace Correo was not an employee "whose principal duties [consisted] in supervising the work of other employees." It follows that the trusts, in their termination, did not result in discrimination in favor of a "supervisory employee." The fact that the petitioner, through fortuitous circumstances, had only one participating employee as of the termination date of the trusts does not, in our opinion, require a retroactive disqualification of the plans, on the ground that they were not for the benefit of employees in general. It is held that the pension and profit-sharing trusts established by the petitioner for the exclusive benefit of his employees were not discriminatory in their operation inclusive of termination. The respondent's determination is reversed. Decisions will be entered under Rule 50. Footnotes
1. The Commissioner's letter of approval stated as follows: "The plans, as evidenced by the trust indentures and other relevant information submitted with the request for a ruling, and the amendments as subsequently adopted, have been considered and this office is of the opinion that the plans meet the requirements of section 165 (a) of the Internal Revenue Code, as amended, and that the amended trusts established thereunder are entitled to exemption under the provisions of that section. Contributions made to the trusts will be allowable as deductions from gross income in accordance with section 23 (p) of the Internal Revenue Code↩, as amended, subject, however, to verifications upon examination of your return."
2. SEC. 165. EMPLOYEES' TRUSTS. (a) Exemption From Tax. - A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary - * * *
(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.↩