Ray Cleaners, Inc. v. Commissioner.
Ray Cleaners, Inc. v. Commissioner
Docket No. 4237-66.
United States Tax Court
T.C. Memo 1968-6; 1968 Tax Ct. Memo LEXIS 290; 27 T.C.M. (CCH) 23; T.C.M. (RIA) 68006; January 10, 1968, Filed Harold Fein, 135 Delaware Ave., Buffalo, N. Y., for the petitioner. Stephen M. Miller, for the respondent. 24 FAY
Memorandum Opinion FAY, Judge: Respondent determined deficiencies of $1,141.80 and $667.64 in petitioner's income tax for the taxable years 1963 and 1964, respectively. Petitioner conceded one issue raised in the pleadings. The issue left for decision is whether petitioner is entitled to deductions under section 404(a) (1) [1] for contributions to a pension plan trust of $3,250 [2] in 1963 and of $3,000 in 1964. *292 All of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner is a corporation organized under the laws of New York in 1956. It is a calendar year accrual basis taxpayer. It filed its Federal corporate income tax returns for the taxable years 1963 and 1964 with the district director of internal revenue, Buffalo, New York. Its principal place of business was Buffalo when it filed its petition in this case. Petitioner is a dry cleaning business. Marvin Gross is the president, manager, and 80 percent stockholder of petitioner. [3] He controls and manages petitioner's fiscal, personnel, and general corporate affairs, including the hiring and firing of employees. On July 15, 1962, petitioner's board of directors passed a resolution adopting a pension plan (hereinafter referred to as the plan) for the benefit of its employees. On the same day petitioner entered into a trust agreement with Irving Benson, Marvin Gross, and Mariam Gross, trustees, establishing a trust (hereinafter referred to as the trust) to administer the plan. *293 The following is a summary of the pertinent provisions of the trust agreement, as amended on December 14, 1963: Effective Date. - The effective date of the plan is July 1, 1962. Eligibility. - To be eligible to participate, a person must be: (1) a regular employee, (2) customarily employed at least 20 hours a week and at least 5 months a year, (3) between the ages of 25 and 56, and (4) employed for 2 full years on the effective date or any anniversary thereof. Participation. - To participate, an eligible employee must contribute to the trust 2 percent of his monthly compensation. "Monthly compensation" does not include overtime pay, bonuses, and other extra compensation. Retirement Benefits. - A participating employee reaches his "normal retirement date" when he becomes 65 years old or when he completes his tenth year of participation in the plan, whichever occurs later. When a participant attains his normal retirement date, he is entitled to receive a monthly pension for the rest of his life. The pension for employees who retire after 15 or more years of service is 50 percent of monthly compensation, less 93.6 percent of monthly social security benefits in effect *294 on July 1, 1962. The pension is proportionately less for employees who retire with less than 15 years of service. Death Benefits. - If a participating employee dies before reaching his normal retirement date, his designated beneficiaries receive certain death benefits. If a retired participant dies within 10 years of receiving his first monthly pension payment, his designated beneficiaries receive his monthly pension for the balance of the 10 years. Petitioner's Contributions. - Petitioner must contribute to the trust an amount which, in combination with the participants' contributions, is sufficient to pay the benefits described above. The trustees compute the required amounts annually. All contributions are irrevocable and can only benefit participating employees and their beneficiaries. Vesting of Employee's Interest. - A participating employee has an immediate vested right to his own contributions. There are three vesting provisions with respect to petitioner's contributions: (1) if petitioner terminates a participant's employment prior to retirement because of proven dishonesty or because of a willful act which injures petitioner 25 or its employees, the participant *295 has no vested rights to petitioner's contributions; (2) if a participant terminates his employment prior to retirement because of a permanent disability, he has a vested right to the full amount of petitioner's contributions which the trustees set aside from year to year for his benefit; and (3) if a participant does not come under the above two categories and if he terminates his employment before retirement, he has a vested right to the following percentages of petitioner's contributions which the trustees set aside from year to year for his benefit: After 3 years of participating
30%
Every additional year of participat- ing over 3 years
10%
Termination. - Petitioner may terminate the trust at any time. If the trust terminates, participating employees or their beneficiaries receive all its assets. Amendments. - Petitioner may amend the trust agreement at any time. Amendments may not, however, decrease the rights of participants or their beneficiaries to amounts which the trustees hold for their benefit at the time of amending. Spendthrift Provisions. - No participant may alienate or assign his benefits. During 1962 petitioner had 21 employees. Of these *296 14 were not eligible to participate in the plan, 9 because they did not have 2 years of service, 4 because they were part-time employees, and 1 because of age. Of the 7 remaining employees, 4 declined to participate and 3 participated. During 1963 petitioner had 22 employees. Of these 15 were not eligible to participate, 10 because they did not have 2 years of service, 4 because they were part-time employees, and 1 because of age. Of the 7 remaining employees, 4 declined to participate and 3 participated. During 1964 petitioner had 19 employees. Of these 8 were not eligible to participate, 2 because they did not have 2 years of service, 4 because they were part-time employees, and 2 because of age. Of the 11 remaining employees, 3 became eligible but were inadvertently not invited to participate, 5 declined to participate, and 3 participated. The three employees who participated in the plan from 1962 through 1964 were: *14
Yearly Pay
Name
Job Description
1962
1963
1964
Marvin Gross
President, manager & 80% stockholder
$10,400.00
$9,525.00
$9,275.00
Meyer Melnick
Spotter
$ 7,520.00
$7,520.00
$7,870.00
Andrew Rias
Presser
$ 4,766.26
$4,952.00
$5,237.85
*297 The employees who did not participate in the plan during 1962 were: Name
Job Description
Salary
Date Hired
Reason for not Participating [1]
Lillian Solomon
Tailor
$3,981.26
4-28-48
1
Jane Rosenberg
Clerk
$4,072.90
1-16-53
2
Molly Blotnik
Tailor
$2,473.28
2- 1-60
2
Doris Jones
Presser
$3,830.88
12-27-54
2
Joseph Mineo
Clerk
$1,474.77
5-31-58
3
Samuel Wernick
Clerk
$2,308.00
9-25-61
4
Clifford Stewart
Presser
$ 20.35
12-18-61
4
Patricia Attea
Marker
$ 260.00
1- 2-62
3
Mary Kutner
Clerk
$2,011.57
4- 1-62
4
Alma Crittenden
Presser
$ 990.68
9- 7-57
3
Dominic Peolucci
Clerk
$ 74.80
4- 1-62
4
Eddie Barrons
Presser
$3,029.78
4-13-62
4
Dorothy Mitchell
Clerk
$ 734.40
6-27-49
2
Bernie Lubonne
Washman
$2,955.78
4- 3-62
4
Minnie Jones
Presser
$2,102.57
4-30-62
4
Molly Bodniak
Presser
$2,104.82
4-30-62
4
Inithea Evans
Cleaning Woman
$ 433.80
5-22-62
3
Josephine Vicario
Clerk
$ 150.00
8-24-62
4
*298 26 The employees who did not participate in the plan during 1963 were: Name
Job Description
Salary
Date Hired
Reason for not Participating [1]
Lillian Solomon
Tailor
$3,891.81
4- 3-48
1
Jane Rosenberg
Clerk
$3,828.20
1-16-53
2
Molly Blotnik
Tailor
$2,697.41
2- 1-60
2
Doris Jones
Presser
$3,367.91
12-27-54
2
Joseph Mineo
Clerk
$1,272.01
5-31-58
3
Mary Kutner
Clerk
2,778.19
4- 1-62
4
Alma Crittenden
Presser
$1,655.59
9- 7-57
3
Eddie Barrons
Presser
$4,388.27
4-13-62
4
Dorothy Mitchell
Clerk
$2,692.92
6-27-49
2
Bernie Lubonne
Washman
$3,461.09
4- 3-62
4
Minnie Jones
Presser
$3,137.73
4-30-62
4
Molly Bodniak
Presser
$3,140.73
4-30-62
4
Inithea Evans
Cleaning Woman
$ 720.00
5-22-62
3
Molly Herring
Marker
$1,993.86
1- 4-63
4
Gail Gross
Clerk
$ 500.00
6- 2-63
5
Mariam Gross
Clerk
$1,850.00
4-12-63
4
Eugene Goodman
Washman
$1,020.00
6- 7-63
4
George Hosmer
Washman
$ 510.00
8-26-63
4
Richard Dechowitz
Clerk
$ 107.50
10-11-63
4
*299 The employees who did not participate in the plan during 1964 were: Name
Job Description
Salary
Date Hired
Reason for not Participating [1]
Lillian Solomon
Tailor
$4,121.70
4- 3-48
1
Jane Rosenberg
Clerk
$4,128.75
1-16-53
2
Molly Blotnik
Tailor
$2,740.00
2- 1-60
2
Doris Jones
Presser
$3,977.25
12-27-54
2
Joseph Mineo
Clerk
$1,307.65
5-31-58
3
Mary Kutner
Clerk
$3,045.60
4- 1-62
2
Eddie Barrons
Presser
$4,640.10
4-13-62
6
Dorothy Mitchell
Clerk
$3,690.77
6-27-49
2
Bernie Lubonne
Washman
$5,450.00
4- 3-62
1
Molly Herring
Marker
$2,830.25
1- 4-63
4
Minnie Jones
Presser
$3,251.50
4-30-62
6
Molly Bodniak
Presser
$3,253.75
4-30-62
6
Mariam Gross
Clerk
$2,650.00
4-12-63
4
William Kohn
Porter
$1,530.00
1-16-64
3
Alma Crittenden
Presser
$1,886.00
9- 3-57
3
Paul Cooley
Clerk
$1,366.04
4- 2-64
3
*300 On January 2, 1963, petitioner wrote the district director of internal revenue, Buffalo, New York, requesting a determination letter on the qualification of the plan under section 401(a) and on the exemption of the trust under section 501(a). On April 26, 1963, petitioner temporarily withdrew its request for a determination letter because of delays in obtaining additional information which the district director requested. On March 24, 1964, petitioner reinstated its request for a determination letter and gave the district director the additional information he had previously requested. On June 18, 1964, petitioner complied with a second request for additional information. 27 On July 23, 1964, the district director issued a determination letter. He determined that the plan failed to qualify under section 401(a) and that the trust was not exempt under section 501(a). On September 15, 1964, petitioner requested respondent's national office to review the district director's determination. The request was granted, and on October 16, 1964, counsel for petitioner conferred with representatives of the Pension Trust Branch, Tax Rulings Division, Internal Revenue Service, On November 16, 1964, the *301 Pension Trust Branch issued a ruling affirming the district director's determination. It stated that the plan failed to qualify under sections 401(a)(3)(A), 401(a)(3)(B), 401(a)(4), and section 1.401-3, Income Tax Regs.
In its Federal income tax returns for 1963 and 1964, petitioner deducted $3,250 and $3,000, respectively, for contributions to the trust. In his statutory notices of deficiency for 1963 and 1964 respondent disallowed the deductions on the grounds that the plan did not qualify under section 401(a) and that the contributions were not deductible under section 404. The issue for decision is whether petitioner's contributions to the trust are deductible under section 404(a)(1). [4] Under this section the determinative question is whether the plan meets the tests of section 401(a). Respondent contends that the plan fails in two respects to qualify under section 401(a). [5] His first contention is that it does not meet the test of section 401(a)(3). He argues that *302 the plan does not meet the percentage requirements of section 401(a) (3)(A). He argues further that it does not meet the alternate test of section 401 (a)(3)(B) because he preciously refused to qualify it under that section and because his previous determination was reasonable, rational, and supportable. Respondent's second contention is that the plan does not qualify under section 401(a)(4) because it discriminates, on its face and in operation, in favor of persons in the "prohibited group" of officers, shareholders, supervisory personnel, and highly compensated employees. *303 Whether a pension plan discriminates, on its face or in operation, in favor of persons in the prohibited group is a question of fact to be decided from the evidence in each case. Pepsi-Cola Niagara Bottling Corp., 48 T.C. 75, 83 (1967), on appeal (C.A. 2, Sept. 11, 1967). Viewing the record as a whole, we do not think the plan in the present case discriminates on its face in favor of persons in the prohibited group. Under its terms, all employees are eligible to participate except those who have less than two years of service, are part-time, or are not between the ages of 25 and 56. These restrictions do not discriminate in favor of persons in the prohibited group. The statute recognizes that the first two restrictions are generally not discriminatory. Section 401 (a)(3)(A). In addition, a reasonable age restriction does not disqualify a plan. See section 1.401-3(a)(3), Income Tax Regs. Furthermore, the plan's requirement that an eligible employee must contribute 2 percent of his pay to participate does not discriminate in favor of persons in the prohibited group. Respondent has taken the general position that a 6 percent 28 contribution *304 requirement is not discriminatory. Rev. Rul. 65-178, 1965-2 C.B. 94, 114. Viewing the record as a whole, we furthermore do not think the plan discriminates in operation in favor of persons in the prohibited group. While only three employees were participants, four others were invited to participate and declined to do so. In view of the fact that the plan's contribution requirement of 2 percent is not burdensome, we cannot hold it discriminatory in operation because some eligible employees declined to participate. Furthermore, the fact that one of the participants was a shareholder-officer and that the other two were the highest paid of all the nonshareholder employees except one, does not mean that the plan is discriminatory in operation. In Pepsi-Cola Niagara Bottling Corp., supra, the Court held that the term "highly compensated" in the statute does not simply mean more highly compensated than other employees. In the words of that opinion, at p. 84: We agree that the term may be relative but we believe, as used here, it should be more related to compensation standards which might produce some rather substantial tax avoidance than to the rate of compensation *305 of the hourly paid employees of petitioner here. Ryan School Retirement Trust, supra; Volckening, Inc; 13 T.C. 723. It is true that five of the six salaried employees received compensation higher than the compensation received by the hourly paid employees, but this does not necessarily mean that they were "highly compensated." * * * On the basis of the Pepsi-Cola case and on the basis of the evidence in the case at bar, we do not thing the two nonshareholder participants were highly compensated. It follows that only one of the three participants was in the prohibited group. We do not think this renders the plan discriminatory in operation. Finally, it is true that in 1964, petitioner inadvertently failed to invite three eligible employees to participate. We do not think, however, that an inadvertent omission disqualifies a plan. Because we find that the plan does not discriminate, on its face or in operation, in favor of persons in the prohibited group, we cannot uphold respondent's determination in the deficiency notices that his refusal to qualify it under section 401(a)(3) (B) was reasonable, rational, and supportable. [6] See Pepsi-Cola Niagara Bottling Corp., supra. *306 We furthermore hold that the plan qualifies under section 401(a)(4).
Respondent's only challenges to the plan under section 401(a) are under subsections (3) and (4). Because we hold against him on these points, we hold that the plan qualifies under section 401(a). It follows that petitioner is entitled to deductions under section 404(a)(1) of $3,250 in 1963 and $3,000 in 1964. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the internal Revenue Code of 1954. ↩
2. The deduction put in issue by the statutory notice and the petition was $3,690.72. Petitioner, however, conceded that $440.72 of this amount is not an allowable deduction.↩
3. Marvin Gross' wife, Mariam, owns the other 20 percent of petitioner's stock.↩
1. Reasons for not participating are keyed as follows: 1 - Age 2 - Eligible for participating but declined 3 - Part-time employee (less than 20 hours per week) 4 - Not employed 2 years 5 - Part-time employee (less than 5 months per year)↩
1. Reasons for not participating are keyed as follows: 1 - Age 2 - Eligible for participating but declined 3 - Par-time employee (less than 20 hours per week) 4 - Not employed 2 years 5 - Part-time employee (less than 5 months per year)↩
1. Reasons for not participating are keyed as follows: 1 - Age 2 - Eligible for participating but declined 3 - Part-time employee (less than 20 hours per week) 4 - Not employed 2 years 5 - Part-time employee (less than 5 months per year) 6 - Became eligible during year but was inadvertently not invited to participate↩
4. Respondent argues that the contributions are not deductible under sec. 404(a)(1) or under an alternate test in sec. 404(a)(5). Petitioner, however, concedes the latter point.↩
5. The relevant portions of section 401(a) are as follows: SEC. 401. QUALIFIED PENSION, PROFITSHARING AND STOCK BONUS PLANS. (a) Requirements for Qualification. - A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section - * * * (3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either - (A) 70 percent or more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or (B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees; and (4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.↩
6. Because sec. 401(a)(3) provides two alternate tests, and because we hold that the plan qualifies under sec. 401(a)(3)(B), it is not necessary to pass on respondent's argument that the plan fails to qualify under sec. 401(a)(3)(A)↩.