*Decision will be entered under Rule 50.*

PEPSI-COLA NIAGARA BOTTLING CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3694-65. Filed April 26, 1967.

*Richard Kania*, for the petitioner.
*Ernest Honecker*, for the respondent.

#### OPINION

DRENNEN, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years 1961, 1962, and 1963 in the amounts of $1,749.34, $1,614.46, and $2,327.03, respectively. The only issue remaining for decision is whether petitioner is entitled to deduct all or any part of its contributions to a trust established under a profit-sharing plan adopted by petitioner in 1960 for the benefit of its permanent salaried employees.

This case was submitted on a stipulation of facts and the exhibits attached thereto, which are incorporated herein by this reference. A summary of the facts necessary to a decision of the issue here involved is as follows.

Petitioner is a corporation organized under the laws of New York on January 26, 1955, and is engaged in the business of bottling and distributing carbonated beverages in Niagara County, N.Y. It filed corporate income tax returns, on the accrual basis, for the calendar years 1961, 1962, and 1963 with the district director of internal revenue, Buffalo, N.Y.

On November 7, 1960, petitioner caused a duly authorized officer to execute in its behalf an instrument establishing a profit-sharing and retirement plan (referred to herein as the plan) for its salaried em-

ployees as defined in the plan. On the same date petitioner also entered into a trust agreement with Harry G. Winter, Lawrence R. Weinreber, and Morley C. Townsend, as trustees, establishing a trust (referred to herein as the trust) to receive and distribute petitioner's contributions under the plan. Harry G. Winter was president and the sole stockholder of petitioner. Lawrence R. Weinreber was petitioner's independent accountant, and Morley C. Townsend was petitioner's attorney.

A summary of the pertinent provisions of the plan is as follows:

The plan was adopted pursuant to a resolution adopted by the board of directors of petitioner on November 7, 1960, effective on December 31, 1961, for the fiscal year ending December 31, 1961.

*Contributions*—Petitioner was to pay to the trustees for each year 40 percent of its net profits, after certain exclusions, in excess of $4,000, but not to exceed 15 percent of the compensation of all participants in the plan during the year.

*Eligibility*—All regular salaried employees who on December 31, 1961, or any anniversary date of the plan had completed 3 years or more of continuous service in the employ of petitioner were automatically eligible to participate. To become a participant an eligible employee was required to execute an acceptance form and to furnish the Employee Committee with the name of his beneficiary under the plan, and proof of his age.

*Participation*—The participation of each eligible employee was the total of his yearly participation in the contributions made by petitioner, plus the share of earnings of the trust allocated to his participating interest, the participation in petitioner's contribution to the trust for a current year to be determined as of December 31 of the year for which his services were rendered. The share of each employee in the current contribution of petitioner to the trust was determined by the number of service units and compensation units allocated to the employee. Each employee was entitled to one service unit for each year of continuous eligible employment with petitioner, and was entitled to one compensation unit for each $100 of compensation paid to the employee during the fiscal year, up to a maximum of 350 compensation units. The value of each unit, service and compensation, was computed by dividing the total units for all participants into the total contribution of petitioner for the fiscal year, and each eligible employee was entitled to participate in the current contribution to the extent of his combined service and compensation units for the year multiplied by the value of each unit.

*Vesting of Employee's Interest*—The interests of participating employees were contingent during the first year of participation in the plan, and thereafter became vested at the rate of 12½ percent each year, except as follows. The interest of a participating employee be-

came fully vested upon his retirement, dismissal without cause, disability, or death, regardless of the years of service. In the event a participating employee was dismissed for cause or resigned voluntarily and entered the employment of a competitor of petitioner, his entire interest was to be forfeited. Forfeitures were to be considered a part of the earnings of the trust for the year during which they occurred.

*Benefits*—The normal retirement date for a participating employee was the anniversary date of the plan next succeeding his 60th birthday and he could retire on any anniversary date thereafter. He could continue in the employ of petitioner, in which event he would continue to participate in the corporation's current contributions to the plan and the current earnings and losses of the trust. Provision was made for early retirement for disability. Upon retirement, or upon termination of service prior to death or retirement, an employee could elect to have his vested participating interest distributed to him in a lump sum or in 120 equal monthly installments, or could have the trustees purchase an annuity policy for him which would provide monthly payments for life with 10 years certain. Upon the death of a participating employee either before or after retirement, any part of the employee's participating interest remaining in the hands of the trustees was to be distributed by them in a lump sum to the designated beneficiary of the employee, or his personal representative or estate.

*Employee Committee and Trust*—Administration and management of the plan was to be exercised by an Employee Committee, consisting of three to five members appointed by the board of directors of petitioner, at least one of whom was neither an officer nor director of petitioner. A trust was to be established to administer and manage the retirement fund.

*Amendments and Miscellaneous*—Petitioner was authorized to modify, amend, or terminate the plan at any time, provided that no modification, amendment, or termination of the plan would permit any part of the corpus or income of the trust fund to be used for, or diverted for, purposes other than for the exclusive benefit of the participating employees or their beneficiaries. In the event of dissolution of petitioner, the plan was to terminate, the interests of all participating employees were to become fully vested, and were to be distributed by the trustees to the participating employees in the manner specified. Participation in the plan did not give an employee the right to be retained in the employ of petitioner.

It was also specifically provided that no action taken under the plan should discriminate in favor of employees who were officers, shareholders, persons whose principal duties consisted of supervising the work of other employees, or highly compensated employees; and that no action should be taken which would operate to divest the interest of a participating employee in the trust fund.

Pursuant to the plan a trust agreement between petitioner and the three trustees heretofore mentioned was executed on the same day the plan was executed, which provided that the trustees were to receive the contributions of petitioner to the trust fund, manage, invest and reinvest the trust funds, and distribute the participating interests therein to the participating employees or their beneficiaries, all as provided in the plan and the trust agreement. The trust agreement further defined the powers, duties, responsibilities, and liabilities of the trustees. The trustees were to account to, and act under the supervision of, the Employee Committee.

During the period here involved petitioner had seven regular salaried employees. Of these salaried employees, all were eligible to participate and were covered under the plan for the years 1961, 1962, and 1963, with the exception of Kenneth Rowland, whose eligibility commenced during the year 1962, and P. Robert Cahill, who was not eligible at all during these years. All of them had been employed by petitioner since 1957 or before, except Rowland, who was employed in 1959, and Cahill, who was employed in 1963. Their names, duties, and compensation were as follows:

Harry G. Winter was the president and sole stockholder of petitioner. His duties as president consisted of exercising control over and management of all of petitioner's fiscal, personnel, and general corporate affairs, including the hiring and firing of all employees. His salary was $28,000 for both 1961 and 1962 and $30,000 for 1963.

Peter P. Seereiter served as vice president of petitioner from July 9, 1962, through December 31, 1963. His duties, both before and after assuming the executive position, involved supervising the work of sales personnel of petitioner as well as engaging in sales work himself for approximately 50 percent of his time. His salary was $10,710 for 1961, $11,180 for 1962, and $11,813.41 for 1963.

Joseph A. Guaetta and Bernard J. Riggs were employed as salesmen by petitioner. Guaetta's salary was $9,410 for 1961, $9,620 for 1962, and $9,880 for 1963. Riggs' salary was $7,595.40 for 1961, $8,060 for 1962, and $8,580 for 1963.

Ray W. Lambrecht was employed by petitioner in a position categorized as a foreman. In addition to performing manual labor similar to that required of permanent hourly paid employees, Lambrecht was responsible for supervising the performance and directing the activities of the permanent hourly paid employees and the seasonal employees. His salary was $8,515.50 for 1961, $8,880 for 1962, and $9,223.50 for 1963.

Kenneth Rowland was employed by petitioner as a bookkeeper during 1961, 1962, and until June 7, 1963, at which time his employment

terminated. His salary was $5,615 for 1961, $5,720 for 1962, and $2,990 for the part of the year he was employed in 1963.

P. Robert Cahill was employed by petitioner as a bookkeeper on June 8, 1963. His salary for the remainder of the year 1963 was $3,430.

In addition to the above regular salaried employees petitioner employed eight permanent hourly paid employees during the years 1961, 1962, and 1963 who were not eligible and were not covered under the plan. Of these employees, three were first employed by petitioner in 1955, one was first employed in 1957, two were first employed in 1959, one was first employed in 1960, and one was first employed in 1961. The highest paid of these eight employees received from petitioner wages totaling $6,626.02 for 1961, $7,128.93 for 1962, and $7,342.94 for 1963. The lowest paid of these employees received wages totaling $3,968.96 for 1961, $4,160 for 1962, and $4,420 for 1963. The remainder of these employees received from petitioner wages totaling amounts between the above high and low figures for each year, the second highest paid receiving wages totaling $800 to $1,000 more than the salary paid Rowland in each year for a full year's work, and the third highest paid receiving wages totaling slightly less than the salary paid Rowland in each of the years for a full year's work.

Also during the years here involved petitioner employed from four to eight temporary and seasonal employees whose customary length of employment did not exceed 5 months in any calendar year or 20 hours in any 1 week, with certain exceptions not pertinent to our inquiry here. None of these employees was covered under the plan.

During March 1962, the trust filed a Return of Employees' Trust Exempt From Tax (Form 990-P), together with a copy of the plan, with the district director of internal revenue, Buffalo, N.Y., and on or about December 26, 1963, petitioner submitted the plan and supporting documents to the district director requesting a formal ruling or determination as to whether the plan met the requirements of section 401(a) of the 1954 Code and whether the trust was exempt from tax under section 501(a) of the Code.

Following an exchange of correspondence and several conferences between representatives of petitioner and the district director's office at which the plan was fully discussed, considered, and examined, petitioner was formally advised by the district director in a letter dated March 30, 1964, that the plan did "not meet the requirements of Section 401(a) and the trust established under the plan is not entitled to exemption under the provisions of section 501(a)." The reasons given, after noting that the plan provided benefits for salaried employees, which was not in itself a discriminatory classification, but that in determining whether prohibited discrimination exists, it is

necessary to consider all employees and all the surrounding circumstances indicative of whether a plan is for the exclusive benefit of employees in general, were as follows:

The plan operates initially to the benefit of 5 salaried employees and contemplates 1 other salaried employee for participation later, after completion of required service. The initial 5 participants include the highest paid employee, who is an officer and the principal stockholder, and others identified with the prohibited group for all being highly paid. The participant who was paid least of all participants in 1961 was compensated $7,595.40, which is more than paid to other employees.

Of 20 employees for the year 1962, 6 satisfy the eligibility requirements. These eligible employees, with but one exception, are more highly compensated than any of the employees excluded from coverage.

In view of the particulars in this case, it is concluded that the employees' profit sharing plan is discriminatory within the meaning of sections 401(a)(3) and (4) of the Internal Revenue Code.

The rejection letter concluded by advising petitioner that it might request a review of the ruling from the national office, and the procedure to be used therefor.

Petitioner availed itself of the review procedure and, after careful consideration of the plan by representatives of petitioner and the Commissioner of Internal Revenue, petitioner was formally notified by letter dated October 26, 1964, from the Chief, Pension Trust Branch, Internal Revenue Service, that "discrimination within the purview of section 401(a)(3)(B) of the Internal Revenue Code is present," the coverage requirements were not met, and accordingly "the plan does not qualify under section 401(a), nor is the trust exempt under section 501(a) of the Code." The reason stated for the prohibited discrimination was that "While a classification limited to salaried employees may be nondiscriminatory, the facts in the instant case show that such classification results in coverage of the officers, shareholders, supervisors and highly compensated employees and exclusion of the hourly rated employees, who are comparatively low paid."

Petitioner amended the plan and trust agreement as of January 1, 1965, to make eligible for coverage under the plan all regular permanent employees of petitioner, excluding only the temporary and seasonal employees as therein defined. The amended plan was submitted to the district director in Buffalo for consideration, and it was determined by that office that the amended plan was for the benefit of petitioner's employees in general and therefore met the requirements of section 401(a) of the Code, and as a result the trust was entitled to tax exemption under section 501(a) of the Code.

On or about June 7, 1963, when Kenneth Rowland severed his employment with petitioner, there was paid to him by the trust, as a distribution under the plan, the sum of $430.52.

Petitioner deducted on its corporate income tax returns for the calendar years 1961, 1962, and 1963, accrued contributions to the trust fund under the plan in the respective amounts of $5,831.13, $5,381.53, and $8,070.06, which amounts were actually paid by petitioner to the trust fund during the year subsequent to their accrual but within the time prescribed by law for filing the returns for the years of accrual. In his notice of deficiency for the years here involved respondent determined that the trust was not a qualified trust within the purview of section 401 of the Code, and accordingly the deductions claimed for contributions to the trust were not allowable under the provisions of section 404 of the Code.

On its tax return for the year 1961 petitioner reported gross receipts of $456,033.49, gross profit of $188,701.83, and taxable income of $12,045.62. On its tax return for the year 1962 petitioner reported gross receipts of $482,794.31, gross profit of $206,291.08, and taxable income of $11,408.32. On its tax return for the year 1963 petitioner reported gross receipts of $501,433.34, gross profit of $208,501.15, and taxable income of $15,219.30.

---

Section 404, I.R.C. 1954,[1] allows a deduction, within specified limits, for contributions made by an employer to a profit-sharing trust established for the benefit of the employer's employees if the taxable year of the employer in which the contributions are paid ends within or with a taxable year of the trust with respect to which the trust is exempt under section 501(a) of the Code. There are, of course, numerous requirements, limitations, and restrictions mentioned in the Code and the regulations which are not mentioned above, but for purposes of our discussion here the above simplified statement should be adequate. One requirement that should be mentioned is that the contributions must satisfy the conditions of section 162, which, for our purposes, means they must constitute reasonable compensation for personal services actually rendered.

Section 501(a) of the Code provides that an organization described in section 401(a) shall be exempt from tax unless such exemption is denied under sections 502, 503, or 504 (which are not applicable here).

Section 401(a) provides, in part, and generally, that a trust created or organized in the United States and forming part of a profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section if it meets certain requirements enumerated therein. Paragraphs (1) and (2) require that the contributions to the trust by the employer be made for the purpose of distributing to the employees or their bene-

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

ficiaries the corpus and income of the fund accumulated by the trust in accordance with the plan, and that the entire income and corpus of the trust fund must be used for the exclusive benefit of the employees or their beneficiaries. Paragraph (3) requires that, in order for the trust to qualify, the plan must benefit either (A) specified percentages of all the employees of the employer (which this plan does not do), or—

> (B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

and paragraph (4) provides that the contributions or benefits provided under the plan must not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees (referred to hereinafter as the prohibited group).

Paragraph (5) provides that a classification shall not be considered discriminatory within the meaning of paragraphs (3)(B) or (4) merely because it is limited to salaried or clerical employees, or merely because the contributions or benefits under the plan bear a uniform relationship to the compensation of the employees.

It is clear that the plan and trust here under consideration (which refers to the plan as originally adopted and in effect for the years here involved) meet all the requirements for qualification under section 501(a) except the coverage requirements, and respondent does not argue to the contrary. Respondent does take the position that because the plan excludes from coverage the permanent hourly paid employees who are generally paid less than the covered salaried employees, the plan is not for the benefit of the employees generally but discriminates in favor of employees within the prohibited group and hence does not qualify under section 401(a). This position is not based on a claim that the plan on its face is discriminatory or that the classification of employees eligible for participation is in itself discriminatory, but rather on the claim that in actual operation the plan does discriminate in favor of the prohibited group.

Respondent argues that under section 401(a)(3)(B) he is given broad discretion to determine whether a classification set up by the employer is discriminatory in favor of the prohibited group and that such a determination by him cannot be overruled in the absence of a showing of abuse of discretion, unreasonableness, or arbitrariness. The short answer to this is that respondent has not determined that the classification set up by petitioner is in and of itself discriminatory; he has only determined that the classification, including only regular

salaried employees, in operation discriminates in favor of the prohibited group because of the peculiar facts of this case.

The legislative history and committee report support respondent's contention that Congress intended to disqualify plans which in fact and in effect discriminate in favor of the prohibited group even though on their faces they do not appear to be discriminatory. See H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 450; and S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 606. But we think it is equally clear that Congress intended to encourage the establishment of retirement plans for employees and was not so much concerned with whether certain classifications of employees received benefits greater than others as it was concerned that the coverage and non-discrimination requirements would safeguard the public against the use of retirement plans as a tax-avoidance device by management groups seeking to compensate themselves without paying their appropriate taxes. See H. Rept. No. 2333, *supra*, 1942–2 C.B. 413; *H. S. D. Co. v. Cavanaugh*, 191 F. 2d 831, followed in *Estate of Harold S. Davis*, 22 T.C. 807. Whether a plan is in effect discriminatory in favor of the prohibited group is a question of fact which must be determined from all the attending circumstances viewed in the light of the underlying purpose of preventing use of plans to avoid taxes for the favored group.

We cannot agree with respondent that the facts and circumstances surrounding the adoption and operation of this plan, as revealed by the evidence presented, indicate that the plan in form or in effect discriminated in favor of the prohibited group in a manner that would violate either the terms or the spirit of section 401(a), and thus not permit the trust to qualify under section 401(a).

As previously noted, respondent does not claim that the classification set up by petitioner was discriminatory per se or that any of the formulas for determining contributions or benefits to the employees within the covered classification were discriminatory. The question is whether the classification set up by petitioner results in covering primarily a group of employees who were officers, shareholders, supervisory, or highly compensated employees, and in operation discriminates in favor of that prohibited group to the detriment of petitioner's other employees. There can be no question that the classification favored the salaried group because the other employees received no benefits at all under the plan. But that such a situation might result without disqualifying the plan is recognized by the language of section 401(a)(3)(B) itself, by the legislative history of this law, see H. Rept. No. 2333, *supra*, 1942–2 C.B. 450, by respondent's own rulings, see Rev. Rul. 66–12 and Rev. Rul. 66–13, 1966–1 C.B. 72 *et seq.*, and by what little case law there is on the subject. See *Ryan School Retirement Trust*, 24 T.C. 127.

Only one of the salaried employees, Winter, covered by the plan was a stockholder, and he was also the only officer covered by the plan at its inception. It is true that Seereiter was given the title of vice president in July 1962, but his duties did not change. Only Winter, Seereiter, and Lambrecht could be characterized as supervisory employees, and both Seereiter and Lambrecht spent at least 50 percent of their time doing the same type work as the employees they supervised, so there is considerable doubt whether they could be classified as "persons whose *principal* duties consist in supervising the work of other employees." Neither Guaetta, Riggs, nor Rowland (the latter of whom will be considered with Cahill as one employee for purposes of this discussion) can be classified as being within the prohibited group unless they can be considered to be "highly compensated employees." It is on this point that petitioner and respondent definitely part company; and where we follow petitioner's path, for reasons hereafter discussed.

If the latter three employees are not considered "highly compensated" within the meaning of the statute, then the plan made eligible 6 out of the 14 permanent employees of petitioner, and only 3 of the 6 could be considered to be within the prohibited group, so that it can hardly be said that the plan results in covering primarily employees in whose behalf discrimination is prohibited. We do not believe the temporary employees should be taken into account when testing the coverage of this plan, and we have little doubt that numerous plans have been qualified where the percentage of covered employees to all of the taxpayer's employees is considerably less than the approximately 43 percent covered by this plan. See Rev. Rul. 66–12, *supra;* I.T. 3613, 1943 C.B. 475, and I.T. 3614, 1943 C.B. 476.

This leaves us with the question whether the salaried employees are to be considered "highly compensated" so as to be included within the prohibited group within the intent of the statute. Respondent argues that "highly compensated" is a relative term with no definitive limits and that inasmuch as the compensation of five of the six covered employees exceeded that of the hourly paid employees all five of them must be included in the prohibited group as "highly compensated employees." We agree that the term may be relative but we believe, as used here, it should be more related to compensation standards which might produce some rather substantial tax avoidance than to the rate of compensation of the hourly paid employees of petitioner here. *Ryan School Retirement Trust, supra; Volckening, Inc.,* 13 T.C. 723. It is true that five of the six salaried employees received compensation *higher* than the compensation received by the hourly paid employees, but this does not necessarily mean that they were "highly compensated." It is also true that both Rowland and Cahill were

compensated at a rate lower than the compensation received by two of the hourly paid employees and just slightly above the compensation of another noncovered employee. It is also true that, with the exception of Winter, the compensation of the highest paid permanent employee was only slightly greater than the compensation of the next highest paid, with the rate of compensation diminishing gradually down the line to the lowest paid employee, so that under respondent's approach each employee except the lowest paid employee might be considered a "highly compensated" employee.

Respondent does not claim that the compensation paid to any of the salaried employees was unreasonable, and from what information we have in this record we could not say it was either. Rather, it appears to us that the compensation scale was about what one would expect in a business such as that conducted by petitioner. The statute itself recognizes that a classification will not be considered discriminatory because it excludes employees whose whole remuneration constitutes "wages" under the Federal Insurance Contributions Act, the maximum of which now exceed or approach the compensation paid to petitioner's hourly paid employees during the years here involved. Excluding Winter, the highest salary paid when this plan was adopted was $10,710 per annum and the highest hourly paid employee received $6,626.02 in 1961. We are not convinced that this differential in compensation between the covered and noncovered employees under this plan makes this plan discriminatory in favor of a group of employees which would permit the tax avoidance the statute attempts to avert.

We do not believe the classification used in the plan here involved results in covering primarily employees in whose favor discrimination is prohibited, or, in fact or in effect, discriminates in favor of a prohibited group within the purview of section 401(a), and we so conclude. Consequently, we find that the trust qualified under section 401(a) and was exempt from tax under section 501(a) for each of the calendar years 1961, 1962, and 1963, and that petitioner is entitled to deduct its contributions to the trust under the plan for each of those years.

Our conclusion above makes it unnecessary for us to decide petitioner's alternative contention that it is entitled to deduct the distribution made to Rowland from the trust in 1963 when he terminated his employment because his interest became fully vested at that time.

To permit the adjustments conceded by petitioner to be taken into account,

*Decision will be entered under Rule 50.*