**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**PEPSI–COLA NIAGARA BOTTLING CORPORATION, Respondent.**

**No. 456, Docket 31907.**

United States Court of Appeals
Second Circuit.

Argued May 2, 1968.

Decided June 28, 1968.

Louis M. Kauder, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C.), for petitioner.

Richard Kania, Williamsville, N. Y., for respondent.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This petition by the Commissioner of Internal Revenue to review a decision of the Tax Court, 48 T.C. 75, annulling his determination of deficiencies in the income tax of Pepsi-Cola Niagara Bottling Corporation for 1961, 1962 and 1963, raises a nice, though narrow, question of the interpretation of § 401(a) of the Internal Revenue Code defining what pension, profit-sharing and stock bonus plans qualify for deduction of contributions as provided in § 404. The statute, so far as here relevant, is set out in the margin.[1]

1. § 401(a) *Requirements for qualification.*—

A trust created or organized in the United States and forming a part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

\* \* \* \* \*

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 percent or more of all the employees, or 80 percent or more of

In November 1960 the Bottling Corporation, an enterprise of moderate size, established a profit-sharing and retirement plan for its salaried employees and a trust to receive contributions thereunder. The Corporation was to contribute 40% of its annual net profits in excess of $4,000 but not exceeding 15% of the compensation of all participants. Eligibility was limited to all regular salaried employees who had completed three years of continuous service on December 31, 1961, or any anniversary date of the plan. Benefits were distributed on the basis of a formula which credited each covered employee with one unit for each $100 of compensation and one unit for each year of continuous employment; no deduction was made for the portion of compensation, $4800 in the years in question, constituting "wages" for which social security contributions were made, 26 U.S.C. § 3121(a) (1).[2] Omitting temporary and seasonal employees on an hourly wage basis whose exclusion is not claimed by the Commissioner to disqualify the plan, the Corporation had six salaried employees who were covered and eight hourly wage employees who were not; their names and compensation are shown in the margin.[3]

all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;
and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

2. Other features of the plan, not significant as to the issue here presented, are set forth in the Tax Court's opinion.

3. A. SALARIED EMPLOYEES COVERED UNDER PLAN.

| NAME | SALARIES | | |
|------|------|------|------|
| | 1961 | 1962 | 1963 |
| Harry G. Winter | $28,000.00 | $28,000.00 | $30,000.00 |
| Peter P. Seereiter | 10,710.00 | 11,180.00 | 11,813.41 |
| Joseph A. Guaetta | 9,410.00 | 9,620.00 | 9,880.00 |
| Ray W. Lambrecht | 8,515.50 | 8,880.00 | 9,223.50 |
| Bernard J. Riggs | 7,595.40 | 8,060.00 | 8,580.00 |
| Kenneth Rowland | 5,615.00* | 5,720.00 | 2,990.00 |
| P. Robert Cahill | n.e.** | n.e.** | 3,430.00* |

B. PERMANENT HOURLY PAID EMPLOYEES NOT COVERED UNDER PLAN.

| NAME | WAGES | | |
|------|------|------|------|
| | 1961 | 1962 | 1963 |
| Raymond J. Mitchell | $ 6,626.02 | $ 7,128.93 | $ 7,342.94 |
| Herbert Holt | 6,452.27 | 6,745.47 | 7,071.47 |
| Roger Roth | 5,255.01 | 5,662.86 | 5,812.61 |
| Randy Riggs | 1,110.99 | 5,601.81 | 6,060.14 |
| Arlie Grose | 5,405.80 | 5,544.50 | 5,604.28 |
| Jane M. Berhalter | 4,823.83 | 5,287.93 | 5,509.87 |
| Mabel Bowers | 4,715.12 | 5,240.47 | 5,553.81 |
| Helen Kendall | 3,968.96 | 4,160.00 | 4,420.00 |

* Not eligible under three-year requirement
** Not employed

The Corporation did not seek a determination of the plan's qualification until December 1963; the District Director of Internal Revenue denied this on the ground that the plan was discriminatory in favor of "highly paid" employees within the meaning of § 401 (a) (3) (B) and (4). The Chief of the Pension Trust Branch sustained this, the Corporation then amended the plan as of January 1, 1965, to make all permanent employees eligible for coverage, and the District Director accepted the plan as so amended. Consistently with these rulings of his subordinates, the Commissioner determined income tax deficiencies for 1961, 1962 and 1963 based on disallowance of contributions of $5,831, $5,381 and $8,080, respectively. The Tax Court annulled this determination on the basis that persons receiving the modest compensation of all the participants save the president of the Corporation could not rationally be regarded as "highly paid," particularly when the differential between them and the uncovered employees was so small, see fn. 3.

We can readily agree that a plan like the Bottling Corporation's was untypical of the "mischief and defect," Heydon's Case, 3 Co. 72 (1584), for which the Revenue Code's pension trust sections had failed to provide until 1942 when they were placed in substantially their present form, 56 Stat. 798, 862–63. We do not, however, accept the Tax Court's result; a legislature seeking to catch a particular abuse may find it necessary to cast a wider net.

The movement for reform of the deduction for pension, profit-sharing and bonus plans had begun with a message to Congress from President Roosevelt on June 1, 1937. This incorporated a letter from the Secretary of the Treasury stating that the exemption "has been twisted into a means of tax avoidance by the creation of pension trusts which include as beneficiaries only small groups of officers and directors who are in the high income tax brackets." 81 Cong.Rec. 5125, 75th Cong., 1st Sess.

After investigating and deciding that correction was indeed in order, Congress had to determine in what manner to move from the agreed general purpose to legislation that could be practically applied to the thousands of varying situations with which the Internal Revenue Service would be faced. Congress adopted a two-fold approach. Plans would qualify if a sufficient proportion of the firm's employees were eligible or participated. If, however, a plan's coverage provisions were not so broad as to include the minimum percentage of employees prescribed in § 401(a) (3) (A), they were to be subjected to a more intensive scrutiny by the Treasury Department whose nature the legislature could prescribe only in a more generalized way. Restrictive plans were to qualify only if the Secretary or his delegate were to find that the eligibility requirements were not "discriminatory" in favor of officers, shareholders, supervisors, or "highly paid employees." The legislative history suggests that Congress did not believe itself equipped to give more content to the two phrases we have quoted. The original House Bill sought to define more precisely the characteristics of plans that discriminated in favor of the "highly paid," at least with regard to a companion provision, § 401(a) (4), which guarded against the danger that highly paid employees would gain a disproportionate share of pension benefits despite the fact that eligibility requirements were not found discriminatory under § 401(a) (3). It stated that the "benefits or contributions" required under the plan shall "not have the effect of discriminating in favor of *any* employee whose compensation is greater than that of *other* employees." H.R. 7378, § 144(a) (4), 77th Cong., 2d Sess. (1942) (emphasis supplied). A literal reading of this provision would unequivocally have made fairness to the lowest paid employee covered by the plan the test of qualification. This formulation, however, was apparently believed to be unduly rigid, for when the tax bill was

returned from the Ways and Means Committee to which it had been referred for reconsideration, § 401(a) (4) had been amended to correspond with the more general language of § 401(a) (3) (B), simply banning discrimination in favor of the "highly paid."

The Commissioner found himself confronted with problems in administering the statute similar to those that Congress had encountered in drafting it. While there are attractions in the idea that a plan can be rejected under §§ 401(a) (3) and (4) only if it discriminates in favor of employees who would generally be regarded as "highly paid," it poses difficulties of administration which the Tax Court did nothing to resolve. Words like "high" and "highly" clamor for a referent. A 500 foot hill would look high in Central Park but not among the Grand Tetons or even at Lake Placid. Apparently the Tax Court regarded the president of the Bottling Corporation with a $28,000-$30,000 salary as "highly paid," and we assume he would be so considered in Niagara Falls, but he hardly would be in Hollywood. More to the point, while we would not regard Bernard J. Riggs, with a salary of $7595-$8580 from the Bottling Corporation as "highly paid," that might not be the view of Helen Kendall whose wages ranged from $3969 to $4420 in the same period, see fn. 3. Considerations such as these led the Commissioner to rule in 1956:

> In order for the plan to meet the coverage requirements, there must be sufficient participation by the lower paid employees to demonstrate that in practice the plan does not discriminate in favor of the high paid employees. * * * The terms "highly compensated" and "lower compensated" are relative, and the distinction between them must be based upon the circumstances of each case. Rev.Rul. 56-497, 1956-2 Cum.Bull. 284, 286.[4]

We cannot say that in thus reading "highly" as "more highly" and taking the compensation of non-covered employees as the standard, the Commissioner went beyond the powers Congress conferred upon him by § 401(a) (3). When Congress has used a general term and has empowered an administrator to define it, the courts must respect his construction if this is within the range of reason. Gray v. Powell, 314 U.S. 402, 411-413, 62 S.Ct. 326, 86 L.Ed. 301 (1941); NLRB v. Hearst Publications, Inc., 322 U.S. 111, 130-132, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). That requirement was met here and it was not for the Tax Court to substitute its reading for that of the administrator on the firing line.[5]

The Tax Court's decision likewise cannot be sustained on the basis that, given the Commissioner's reading of the statute, the facts did not fairly support his determination of non-compliance. While use of the phrase "found by the Commissioner," § 401(a) (3) (A), does not preclude meaningful judicial review, it does suggest an intention that the Commissioner's finding be given a shade

---

4. The Commissioner cites as further persuasive evidence of the propriety of his relative interpretation §§ 406-07 which were added to the Internal Revenue Code as part of the Revenue Act of 1964, 78 Stat. 19, 58-63. In prescribing the method by which a domestic corporation may include in its pension plan United States citizens working abroad for a foreign subsidiary the statute directs, § 406(b) (1) (B) that

> (B) the determination of whether such individual is a highly compensated employee shall be made by treating such individual's total compensation * * * as compensation paid by such domestic corporation and by *determining such individual's status with regard to such domestic parent corporation.* (Emphasis added.)
> * * * * *
> The same rule applies with respect to foreign-based employees of domestic subsidiaries of domestic parent corporations. Section 407(b) (1) (B), Internal Revenue Code of 1954.

5. We were told at the argument that the sparsity of reported cases dealing with the problem here considered is due to the general practice of obtaining advance clearance of plans.

more than its usual substantial weight. Compare Grenada Industries, Inc. v. C.I.R., 17 T.C. 231, 255, aff'd, 202 F.2d 873 (5 Cir.), cert. denied, 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953). In two of the three years every one of the covered eligible employees received higher compensation than any of the non-covered employees, although the differential between the lowest of the covered group and the highest of the uncovered group was only in the neighborhood of $1000; and even in 1962 only one non-covered employee received more than one covered employee. The median salary of the covered group was around $9000; the median wage of the noncovered group was less than $6000. Averages would produce a larger discrepancy. Just how high a penetration of the covered group by the uncovered group would require the Commissioner to find the taint removed is an issue not here before us.

We add only that the Corporation's case is not aided by § 401(a) (5). While that subsection says that a plan shall not be considered discriminatory "merely because it is limited to salaried or clerical employees," this is quite different from saying that no plan covering all salaried employees can be discriminatory. See Fleitz v. C.I.R., 50 T.C. No. 35 (1968).

The judgment is reversed, with directions to the Tax Court to sustain the Commissioner's determination.

WATERMAN, Circuit Judge (dissenting):

I must respectfully dissent from my distinguished brethren. I would affirm the Tax Court on its opinion, reported at 48 T.C. 75. I would hold, with that court, that taxpayer's employees' profit-sharing plan in effect in the calendar years 1961, 1962, and 1963, was not discriminatory in favor of a prohibited group of employees within the meaning of Sections 401(a) (3) and 401(a) (4) of the Internal Revenue Code quoted in footnote 1 of the majority opinion.

The case is before us because the Commissioner disallowed the deductions taxpayer took in calendar 1961, 1962, and 1963, for its contributions to the trust that was established to manage the fund provided for by the plan, and he appeals from the decision of the Tax Court, adverse to him, which allowed them. Upon disallowing these deductions the Commissioner determined income tax deficiencies for the three years of $1,749.34, $1,614.46, and $2,-327.03, respectively. The Commissioner's ground for holding that taxpayer's plan resulted in prohibited discrimination and therefore did not qualify under § 401(a) was that the plan discriminated in favor of taxpayer's salaried employees and discriminated against its hourly rated employees, the position of the Internal Revenue Service, quoted in the Tax Court's opinion, 48 T.C. 75, at 80, being that: "While a classification limited to salaried employees may be non-discriminatory, the facts in the instant case show that such classification results in coverage of the officers, shareholders, supervisors and highly compensated employees and exclusion of the hourly rated employees, who are comparatively low paid."

All pertinent facts were stipulated before the Tax Court, and a summary of the plan's provisions is set forth in the Tax Court's opinion. The Tax Court, and my brothers in footnote 3 of their majority opinion, recite the compensation the six covered salaried employees and the eight hourly paid employees received during each of the three years.

It is obvious that the Tax Court's analysis, 48 T.C. 75 at 84–85, of the compensation received by each of the fourteen permanent employees of taxpayer demonstrates that the Commissioner had not related the statutory term "highly compensated employees" to the compensation standards designed to prevent rather substantial tax avoidance that Congress had in mind when the statutory sections were passed. Indeed, as pointed out by the Tax Court, the Commissioner's argument advanced to that court and reiterated by him to us is that this taxpayer's plan should not

be looked at with reference to whether it effects the substantial tax avoidance that Congress had in mind and desired to proscribe. The Commissioner's position is that, irrespective of its effect upon the quantum of tax receipts involved, a plan may not be approved by him if in its operation favoritism is shown to "highly compensated employees," which term is not to be applied in an absolute sense, but vis-a-vis the excluded employees.

My brothers appear to accept this argument. As expository of Congressional intent, I doubt its validity, but, assuming the argument to be generally a sound one, it is surely inapplicable here. A glance at the 1962 pay schedule[1] for all employees except possibly Winter, the owner of the business, demonstrates that in an absolute sense the salaries of the salaried employees did not make them "highly compensated," in that the salaries made them high-bracket taxpayers; and that, in a relative sense vis-a-vis the excluded employees, two of the excluded hourly-compensated employees were more "highly compensated" (also in an absolute sense, but whether looked at absolutely or relatively, in terms of efficacy at the supermarket, having more funds to spend) than salaried employee Rowland, and that all but one of the eight excluded employees received an averaged gross weekly pay check within $10 a week of Rowland's $110, the average weekly pay of the seventh lowest paid excluded employee being $100.88. On this set of facts, though the plan is limited to salaried employees, I am not left with a definite and firm conviction that the Tax Court erred in holding that this limited coverage did not discriminate in favor of the "highly compensated employees" of taxpayer.

The issue of discrimination is basically an issue of fact, an issue determinable case by case. Here I do not find the factual findings of the Tax Court to be unsupported, see 26 U.S.C. § 7482(a), Fed.R.Civ.P. 52(a), or that the inferences which that court drew from its examination of the stipulated facts and agreed-upon exhibits to be implausible, C.I.R. v. Duberstein, 363 U.S. 278, 289–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960) or that the court has overlooked pertinent facts, see Schley v. C.I.R., 2 Cir., 375 F.2d 747, 757 (dissenting opinion). Therefore I am not of the opinion that the Tax Court's finding that the operation of taxpayer's plan does not discriminate is a clearly erroneous finding.

Nevertheless, the Commissioner suggests that, if we are to consider ourselves bound in any way by factual findings made below we are bound, unless his findings are arbitrary, by his, the Commissioner's findings and by his unreviewed exercise of his technically motivated judgment; and we ought not to be bound by the factual determinations of the Tax Court sitting in review over him. Despite this rather extraordinary argument, I am sure that the Tax Court has justified and will continue to justify its existence as an impartial adjudicator between taxpayer and tax collector, and I, for one, despite the Commissioner's express wish in the premises, do not intend to by-pass it here.

In a case decided by the Tax Court later than this case now before us, the Tax Court, distinguishing Pepsi-Cola Niagara Bottling Co., followed the Commissioner, held that he acted properly in not qualifying the plan under § 401(a) which was then before it, and agreed with him that "his determination should not be set aside unless it is found to be arbitrary or an abuse of discretion." Ed and Jim Fleitz, Inc. et al. v. Commissioner, 50 T.C. No. 35 (1968). Applying this standard the Tax Court reaffirmed the result my brothers would reverse here, and therefore impliedly found that here the Commissioner did act arbitrarily. This case-by-case development in the area seems to me to

---

1. The last full year in which Rowland was employed, and the year in which he became eligible under the Plan.

be quite praiseworthy and to indicate that the Tax Court is properly applying proper standards of review.

I would affirm.