107 T.C. No. 15


UNITED STATES TAX COURT


SCOTT C. AND SHERRY L. RUSSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23686-94.                    Filed November 6, 1996.


P, a funeral director, is a full-time employee of
Russon Brothers Mortuary, a C corporation, all the
stock of which was owned by his father and two uncles.
In 1985, P, his brother, and two cousins (all funeral
director employees of Russon Brothers) agreed to
purchase all the stock from their fathers so that the
sons could conduct the mortuary business and earn a
living continuing the business founded and developed by
their fathers. P incurred indebtedness in order to
purchase his share of the stock. At issue is whether
interest paid on that indebtedness is deductible as
business interest or whether deductibility is subject
to the investment interest limitations of sec. 163(d),
I.R.C., as modified by the Revenue Act of 1986, Pub. L.
99-514, 100 Stat. 2085.

Pursuant to sec. 163(d)(1), I.R.C., the amount
allowable as a deduction for "investment interest" may
not exceed the taxpayer's "investment income",
sometimes known as portfolio income. "Investment

interest" is defined in sec. 163(d)(3), I.R.C., as interest paid on indebtedness properly allocable to "property held for investment," a term that is defined in sec. 163(d)(5)(A)(i), I.R.C., to include "property which produces income of a type described in sec. 469(e)(1)," i.e., portfolio income such as dividends, interest, etc.

Held:  Since stock is the type of property that normally pays dividends, it is covered by sec. 163(d)(5), I.R.C., as "property which produces income" of a type described in sec. 469(e)(1), I.R.C., notwithstanding that in this case no dividends have in fact been paid in the past on Russon Brothers stock. Accordingly, interest paid by P on indebtedness incurred to purchase the stock is subject to the limitations of sec. 163(d)(1), I.R.C.

J. Michael Gottfredson, for petitioners.

James B. Ausenbaugh and Mark H. Howard, for respondent.

OPINION

RAUM, Judge:  The Commissioner determined deficiencies in petitioners' Federal income taxes of $4,220.50, $4,231.92, and $3,967.60 for the taxable years 1990, 1991, and 1992, respectively.  Petitioner husband (petitioner or Scott) together with his brother and two cousins, all employed full time as funeral directors in a mortuary operated by a C corporation, purchased all the stock of that corporation from its owners, their fathers, so that they could conduct the mortuary business full time and "earn a living."  At issue is whether interest paid on an indebtedness incurred by petitioner to purchase his share of the stock is deductible as business interest or is subject to

the investment interest limitations of section 163(d) as modified by the Revenue Act of 1986, Pub. L. 99-514, 100 Stat. 2085. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the tax years involved.

Petitioners resided in Centerville, Utah, when the petition in this case was filed. Petitioner is an employee of Russon Brothers Mortuary (Russon Brothers), a Utah corporation that was organized as a "C" corporation in 1969 and continues as such to the present. Petitioner began full-time employment with Russon Brothers in September 1979 as a funeral director and has continued full time with Russon Brothers to the present.

On December 23, 1985, Scott, his brother Brent C. Russon, and two cousins, Robert L. Russon and D. Gary Russon, agreed to buy all the stock in Russon Brothers from Scott and Brent's father, Milton W. Russon, Robert's father, Leo W. Russon, and Gary's father, Dale L. Russon. Milton, Leo, and Dale are brothers, each of whom owned one-third of the stock of Russon Brothers. Scott, Brent, Robert, and Gary agreed to pay their fathers $999,000 for the stock in Russon Brothers, each son to pay one-fourth (1/4) of the purchase price, payable ten percent (10%) down and the balance payable in 180 equal monthly payments with interest at nine percent (9%) on the remaining balance. The Agreement gave the four buyers the "right to exercise the ownership rights * * * [which] shall include * * * the right to all the dividends from the stock," except as limited by the

Agreement.  One of the limitations provided that until the full purchase price was paid, the buyers could not "declare or pay any dividends or make any distributions" relating to the stock without written permission of the sellers, the fathers.

Scott, Brent, Robert, and Gary all were funeral directors at the time of the purchase.  They were trained and taught the mortuary business at Russon Brothers.  They qualified themselves to operate the mortuary business through schooling and while working at Russon Brothers.  On December 23, 1985, Russon Brothers, as the Company, Scott, Brent, Robert, and Gary, as Buying Shareholders, and Milton, Leo and Dale, as Selling Shareholders, entered into a Stock Purchase Agreement.  On December 23, 1985, Milton, Leo, Dale, Brent, and Gary were elected directors of Russon Brothers.  The new directors then elected Robert as president, Brent as vice president, and Scott as secretary-treasurer of Russon Brothers.

At the time the stock was purchased Milton and Leo retired from Russon Brothers.  Dale continued as a full-time employee for a few months in order "to receive his maximum Social Security benefits allowable to him for retirement at age 62".  Scott, Brent, Robert, and Gary purchased the Russon Brothers stock from their fathers so that they could manage, operate, conduct, and participate full time in the mortuary business and earn a living continuing a business started and developed by their fathers. Scott did not have a substantial investment motive when he

purchased the stock.  Milton, Dale, and Leo sold the Russon Brothers stock to Scott, Brent, Robert, and Gary so the four sons of the three fathers could actively continue the mortuary business.

All the assets of Russon Brothers, except for a mutual fund acquired by the company in 1989 for $12,000 with a 1995 value of $20,000, are used actively in the mortuary business.  The checking account of Russon Brothers has an average balance of $70,000 with cash available of $30,000 and is all actively used in the mortuary business.

Russon Brothers has never paid interest, dividends, annuities, or royalties to any of its shareholders during its existence of 26 years.  Beginning before December 23, 1985, and continuing through all years involved in the tax matter before the Court, Scott, Brent, Robert, and Gary actively and materially participated in Russon Brothers as an active mortuary business on a regular, continuous, and substantial basis in excess of 40 hours per week.  Scott, Brent, Robert, and Gary have never been engaged in the trading or dealing of stocks or securities.

Section 163(a) allows "as a deduction all interest paid or accrued within the taxable year on indebtedness."  However, section 163(d)(1) provides that "In the case of a taxpayer other than a corporation, the amount allowed as a deduction under this chapter for investment interest for any taxable year shall not exceed the net investment income of the taxpayer for the taxable

year."  Section 163(d)(3) defines "investment interest" as "any interest allowable as a deduction under this chapter * * * which is paid * * * on indebtedness properly allocable to property held for investment."  Section 163(d)(5) defines "property held for investment" as follows:

>     (A)  In general.  The term "property held for investment" shall include--
>
>>         (i) any property which produces income of a type described in section 469(e)(1), and
>
>>         (ii) any interest held by a taxpayer in an activity involving the conduct of a trade or business--
>
>>>             (I) which is not a passive activity, and
>
>>>             (II) with respect to which the taxpayer does not materially participate.
>
>>             *     *     *     *     *     *     *
>
>     (C)  Terms.--For purposes of this paragraph, the terms "activity", "passive activity", and "materially participate" have the meanings given such terms by section 469.

The income described in section 469(e)(1) includes "interest, dividends, annuities, or royalties not derived in the ordinary course of a trade or business", sometimes known as portfolio income.

The dispute in this case revolves around whether the Russon Brothers stock is "property held for investment".  Respondent has stipulated that petitioner materially participates in Russon Brothers, and concedes that section 163(d)(5)(A)(ii) does not

apply to petitioner. However, since stock is generally productive of dividends, the Commissioner contends that the stock here is covered by section 163(d)(5)(A)(i), notwithstanding that the Russon Brothers stock has, in fact, never paid a dividend. Accordingly, the argument continues, the Russon Brothers stock is "property held for investment", and, as such, petitioners' deduction for the interest is limited to their investment income.

If this case were to be decided under the Code as it existed prior to enactment of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, petitioners might be entitled to prevail. Under prior law, the term "investment interest" was defined as "interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment." Sec. 163(d)(3)(D). At that time, the phrase "property held for investment" had not been defined in the Code or the regulations. Recklitis v. Commissioner, 91 T.C. 874, 907 (1988). To determine whether interest should be subject to the limitations of then section 163(d)(1)[1], the Tax Court looked to whether the taxpayer

---

[1] The 1985 version of section 163(d)(1) provides:

(1) In general.--In the case of a taxpayer other than a corporation, the amount of investment interest * * * otherwise allowable as a deduction under this chapter shall be limited, in the following order, to--

    (A) $10,000 ($5,000, in the case of a separate return by a married individual), plus

    (B) the amount of the net investment income * * * by which the deductions allowable under this

had a substantial investment intent.  Miller v. Commissioner, 70 T.C. 448, 455 (1978).  Whether the taxpayer had the requisite intent was a question of fact.  Id. at 455-456.  The parties in this case stipulated that petitioner did not have a substantial investment motive when he purchased the stock.  Prior to the Tax Reform Act of 1986, he would likely have prevailed.

The Tax Reform Act of 1986 broadened the definition of investment interest.  Section 511(a) of the 1986 Act defines "property held for investment" to include "any property which produces income of a type described in section 469(e)(1)."  100 Stat. 2245.  The definition applies uniformly to every taxpayer; his mindset is irrelevant.  As a result, the reach of the definition under the 1986 Act is more inclusive.

Petitioners contend that the phrase "property which produces income" in section 163(d)(5)(A)(i) is limited to property which has actually produced one of the types of income described in section 469(e)(1)(A).  However, the Government's position here is supported by the legislative history.  In the report of the Senate Finance Committee accompanying section 469, portfolio income includes "gain or loss attributable to disposition of (1)

---

section * * * and sections 162, 164(a)(1) or (2), or 212 attributable to property of the taxpayer subject to a net lease exceeds the rental income produced by such property for the taxable year.

In the case of a trust, the $10,000 amount specified in subparagraph (A) shall be zero.

property that is held for investment (and that is not a passive activity) and (2) property that <u>normally</u> produces interest, dividend, or royalty income."  S. Rept. 99-313 at 728 (1986), 1986-3 C.B. (Vol. 3).  (Emphasis added.)  This committee report runs counter to petitioners' assertions as set forth in their brief that stock <u>must</u> produce a dividend before it is "property held for investment".  The report indicates that Congress did not <u>require</u> the payment of interest, dividends, etc.  Section 163(d)(5)(A)(i) refers to section 469(e)(1) for one definition of "property held for investment".  Inasmuch as portfolio income under section 469(e)(1) includes property that "normally produces" interest, dividends, etc., it follows that the reference to section 469(e)(1) in section 163(d)(5) would also include property which "normally produces" dividends.  Certainly, stock is the kind of property that "normally produces" dividends. Would petitioners' position be different here if the corporation had paid only a very small dividend over the years?

Moreover, on the record in this case, the possibility of dividends being paid was clearly contemplated by the buyers and sellers of the stock.  Indeed, the agreement of sale of the stock explicitly recognized that the purchasers would be entitled to "all of the dividends from the stock", subject only to the written consent of the sellers prior to the payment in full of the purchase price.  That condition is not at all to be regarded as uncommon where there is a sale of all the stock of a

corporation. Further, it should be remembered that, although the sale may be treated as having been made at arm's length, nevertheless the sellers were the fathers of the purchasers, and at least in some circumstances it would seem more likely that their consent would not be withheld than in the case of strangers.

Petitioners contend that the purpose of the new 1986 provisions supports the allowance of the claimed deduction in their case. To be sure, the legislative history of the 1986 Act does disclose that Congress was concerned with plugging a loophole that had permitted taxpayers to take deductions against their earned income by reason of interest, expenses, losses, etc., attributable to tax shelters and other arrangements not related to the taxpayer's trade or business. See H. Rept. 99-426 at 299-300 (1985), 1986-3 C.B. (Vol. 2). And petitioners' rely upon a statement of the staff of the Joint Committee on Taxation explaining the reason for the new provisions, as follows:

> Under prior law, leveraged investment property was subject to an interest limitation, for the purpose of preventing taxpayers from sheltering or reducing tax on other, non-investment income by means of the unrelated interest deduction. Congress concluded that the interest limitation should be strengthened so as to reduce the <u>mismeasurement of income</u> which can result from the deduction of investment interest expense in excess of current investment income, and from deduction of current investment expenses with respect to investment property on which appreciation has not been recognized. [Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 at 263 (J. Comm. Print 1987); emphasis added.]

Petitioners call attention to the fact that in this case there would be no "mismeasurement of income which can result from the deduction of investment interest expense in excess of current investment income."  However, there are at least several answers to petitioners' point.  In the first place, as has been stressed earlier in this opinion, the statutory language was intended by Congress, as shown in the report of the Senate Finance Committee, to cover "property that normally produces interest, dividends or royalty income."  S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 728.  (Emphasis added.)  And in this case the property involved, stock, is of a type that "normally" produces dividends.  In the second place, as pointed out by Judge Friendly in Commissioner v. Pepsi Cola Niagara Bottling Corp., 399 F.2d 390, 392 (2d Cir. 1968), "a legislature seeking to catch a particular abuse may find it necessary to cast a wider net."

Further, petitioners fail to consider the fact that Russon Brothers is a C corporation.  If Russon Brothers were an S corporation or a partnership, it appears that Scott, as an active manager, would be entitled to deduct the interest, without limitation, on the debt incurred to purchase the stock as a direct owner of the business.  However, as a C corporation, Russon Brothers is a separate taxpaying entity, distinguishable from its owners.  Cf., e.g., Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).  Russon Brothers owns the mortuary business, not Scott and his fellow stockholders.  Scott

is an employee of the mortuary business.  As a result, he is not entitled to deduct the interest on the debt incurred to purchase the Russon Brothers stock as trade or business interest.

The result that we reach is in accord with Rev. Rul. 93-68, 1993-2 C.B. 72, which considers a case virtually identical with this case.  The revenue ruling explained its reasoning as follows:

> Because stock <u>generally</u> produces dividend income, it is property held for investment within the meaning of sections 163(d)(5)(A) and 469(e)(1)(A) of the Code, unless the dividends are derived in the ordinary course of a trade or business.  In this case, any dividends paid by X [a C corporation] would not be derived by A [an employee and purchaser of stock in X] in the course of a trade or business because A is neither a dealer nor a trader in stock or securities.  Thus, the X stock purchased by A is property held for investment pursuant to section 163(d)(5)(A), regardless of A's motives for purchasing or holding that stock.  * * * [Emphasis added.]

Rev. Rul. 93-68, 1993-2 C.B. at 73.  Although we are by no means bound by the revenue ruling, we think its reasoning is correct, and we have independently reached the same result here.

Section 163(d)(5)(A) contains two objective tests for "property held for investment."  We have concluded that petitioner's stock in Russon Brothers satisfies the first test under section 163(d)(5)(A)(i).  It is therefore unnecessary to consider the second test in subparagraph (A)(ii), although it would seem, and the Government concedes, that the second test does not apply here.

Decision will be entered for respondent.